CHARLOTTE J. L'ENGLE, *Appellant*, v. WALTER OVERSTREET *et al., Appellees.*

Where parties are in possession of lands under a contract which is on its face a lease with the privilege to receive a convey-

ance upon payment of the purchase price within a stated time, and it appears, that a part of the purchase was paid before the execution of the lease, a specific performance of the contract to convey may be enforced after the expiration of the time specifically stated in the contract.

'Appealed from the Circuit Court for Duval County.

## STATEMENT.

The original bill of complaint in this cause will be found in L'Engle v. Overstreet, 61 Fla. 653, 55 South. Rep. 381, where an order overruling a demurrer to the bill was reversed. Subsequently the following amended bill of complaint was filed:

"Plaintiffs, Walter Overstreet, P. A. Cunningham and Arthur J. Cunningham, all of Duval County, State of Florida, bring this their amended bill of complaint against Charlotte J. L'Engle also of said County, and thereupon complain and say:

1. That the defendant is aged and infirm and for many years past has entrusted to her son Porcher L'Engle a practicing attorney residing in Duval County, Florida, all of her business transactions involving the leasing, selling and conveying of lands and for many years the plaintiff Walter Overstreet, has been on very friendly terms with said Porcher L'Engle, reposing confidence and implicit trust in him, having at various times rendered him service as a surveyor at his request without making charge therefor and plaintiffs never suspected that said Porcher L'Engle would seek to take any advantage of the plaintiffs in the transaction hereinafter mentioned. On the contrary the said Porcher L'Engle had given plaintiff Overstreet to understand that he would not hold plaintiffs to a strict compliance on the very day specified

in the instrument hereinafter set forth in the matter of payments therein mentioned. That prior to March, 1905, said Walter Overstreet and P. A. Cunningham had determined to purchase and invest in real estate in or near the city of Jacksonville and had considered various pieces of property, and finally examined the lands mentioned in the instrument hereto attached as Exhibit 'A' hereto, and decided to purchase the same if they could do so on reasonable terms and at a reasonable price, and said Overstreet called on the said L'Engle as the agent and attorney in fact for the defendant with reference to purchasing said land and inquired the price thereof. Said Porcher L'Engle named the sum of Two Thousand Dollars as the price of said land, and said Overstreet conferred with said P. A. Cunningham with reference thereto and they decided to purchase the same, whereupon the said Overstreet called on the said Porcher L'Engle again with a view to making the said purchase and said Porcher L'Engle then stated that he would want Twenty-five Hundred Dollars for said land. Said Overstreet then told said Porcher L'Engle that he would confer with said Cunningham and let said L'Engle know the result, and later the said Overstreet and Cunningham did confer and decided to pay the sum of Twenty-five Hundred Dollars as the price for said land if the terms of payment could be agreed upon, and said Overstreet and Cunningham together called at the office of said L'Engle for the purpose of completing the purchase of said land whereupon said L'Engle stated to said Overstreet and Cunningham that defendant would not sell the said land for less than Three Thousand Dollars—One Thousand Dollars in cash and the remainder in five years at eight per cent. interest, payable quarterly. Whereupon said Overstreet and Cunningham agreed to purchase said land upon said terms.

and said L'Engle undertook to prepare and did prepare a form of contract or agreement covering the said transaction. Said Overstreet and Cunningham having full confidence in said L'Engle allowed him so to do without referring the same to any attorney and without giving the precise terms of the instrument very careful attention themselves. And the said L'Engle did prepare the instrument hereto attached marked Exhibit 'A' made a part hereof, and the same was executed as it purports to have been, and said Overstreet and Cunningham paid to said L'Engle as agent and attorney in fact for the said defendant the sum of One Thousand Dollars—that is to say $500.00 by check drawn by said Walter Overstreet for $500.00, and $300.00 by check drawn by Walter Overstreet for $300.00 and $200.00, in cash paid by said P. A. Cunningham, and thereupon and at the same time the said Overstreet gave the said L'Engle his check for $40.00. Said instrument, Exhibit 'A' bears date March 24, 1905, but was not actually delivered until about a week or ten days subsequent to that date, and when delivered to said Overstreet and Cunningham bore the notation of said Porcher L'Engle thereon in the words and figures following, to-wit: 'Lease paid to June 30, 1905, P. L'E.' Plaintiffs aver that the said Porcher L'Engle was duly authorized to negotiate and make said sale and conduct said transaction and to execute the said instrument Exhibit 'A' for and in behalf in the defendant as her attorney in fact, and that the same is in law her deed, and plaintiffs pray reference thereto as if the same were herein set forth in full. And plaintiffs aver that on May 4, 1901, said Charlotte J. L'Engle executed and delivered to said Porcher L'Engle a power of attorney a true copy whereof is hereto annexed marked Exhibit 'B' to which

plaintiffs pray reference as if the same was herein set forth in full.

2.   Plaintiffs further allege that they never intended to lease or rent said land but their intention from the first was, and their agreement with the defendant through her said attorney in fact was, that they were to purchase the same as hereinbefore mentioned. And that all the acts of the plaintiffs hereinbefore mentioned were with the intent and purpose of accomplishing the purchase of the said land, and in accordance with what they allege to be the true intent and meaning of the said instrument Exhibit 'A' and the said quarterly payments were not rent or lease payments but were really interest at the rate of eight per cent per annum on the remainder of the purchase money unpaid—to-wit: $2,000.00.

3.   That heretofore, to-wit: in the year 1909, said Walter Overstreet owned and possessed a one-half undivided interest in certain timber rights in Brevard County, Florida, which said half interest of the said Overstreet was then and subsequent thereto of a value considerably in excess of Sixty-three Hundred Dollars. That in August, 1909, said Overstreet mentioned to said Porcher L'Engle that he, said Overstreet was about to sell for Sixty-three Hundred Dollars net to him his half interest in said timber rights, and that he had theretofore held the same at a much larger price, and that he was about to sell the same at a sacrifice price in order to enable him, said Overstreet, to pay a note to one L. A. Fraley for One Thousand Dollars and a mortgage to one Harris for Two Thousand Dollars, and to pay the Two Thousand Dollars, mentioned in the said agreement, Exhibit 'A' hereto. That thereupon said L'Engle offered to lend him —said Overstreet, enough money to take care of said indebtedness of said Overstreet would agree to pay said

L'Engle one-half of all in excess of Sixty-three Hundred Dollars that said Overstreet might obtain from the sale of said land, which said offer of said L'Engle was thereupon accepted by said Overstreet and a written agreement was thereupon entered into between them in the words and figures following, to-wit: 'Overstreet & L'Engle agree to divide ½ and ½ any amount received over $6,300 for Overstreet's half interest in timber leases in Brevard County, Florida, August 30, 1909.

Porcher L'Engle,<br>Walter Overstreet.'

The said Porcher L'Engle in consideration thereof did pay off said mortgage to said Harris, and obtained a satisfaction thereof from said Harris, and endorsed the note of said Overstreet for One Thousand Dollars and discounted or caused to be discounted the said note and with the proceeds thereof the said note to said Fraley was paid; and the said note as aforesaid endorsed by said L'Engle was from time to time renewed by a new note bearing the endorsement of said L'Engle until about the 25th of March, 1910, when said L'Engle refused again to endorse the said note as renewed and demanded of said Overstreet that he pay the said Harris mortgage which said L'Engle then retained in his possession. That until the said refusal of the said L'Engle to endorse the said renewal note, said Overstreet had understood and relied on the understanding that by reason of said agreement of August 30, 1909, between himself and the said L'Engle for a division of the profits on the half interest of the said Overstreet in the said timber rights, the said L'Engle would relieve the said Overstreet from any default in payment of the Two Thousand Dollars mentioned in said agreement, Exhibit 'A'. That the said action of the said L'Engle in refusing to endorse the said renewal

note demanding the payment of the said Harris mortgage precipitated upon the said Overstreet unexpectedly the necessity of paying about Five Thousand Dollars, for as plaintiffs aver the only purpose of said Overstreet in giving the said L'Engle the above mentioned agreement of Auguct 30, 1909, was to avoid the necessity for a sacrifice of the property in said agreement mentioned, and to delay the payment of said note to said Fraley and said mortgage to Harris, and said Two Thousand Dollars to defendant until the property mentioned in said agreement of August 30, 1909, should be sold. That between the 30th of August, 1909, and the 25th day of March, 1910, said Overstreet had one or more genuine and advantageous offers to sell his said half interest in said timber rights in Brevard County for a sum in excess of Sixty-three Hundred Dollars and communicated the same to the said L'Engle, and said Porcher L'Engle in every instance declined to consider said proposed sales or either of them although one of said proposed sales was for Eight Thousand Dollars; and said L'Engle thereupon assured the said Overstreet that there was no hurry about the payment of said several sums to postpone the payment of which said agreement of August 30, 1909, was made as aforesaid; and said Overstreet relied on said assurance of said Porcher L'Engle and assumed that he would not have to pay the Two Thousand Dollars mentioned in Exhibit 'A' until said Brevard County land should be sold. That thereafter in April, 1910, said Overstreet paid said L'Engle the Two Thousand Dollars advanced on account of said Harris mortgage and paid the outstanding note of said Overstreet endorsed by said L'Engle in the sum of One Thousand Dollars in renewal of the note discounted to pay the said Fraley note, and demanded of said L'Engle the papers in connection there-

with, including the satisfaction of said Harris mortgage; and said Porcher L'Engle thereupon refused to deliver the said papers until the said Overstreet should have surrendered the agreement Exhibit 'A' hereto, which said Overstreet declined to do. That on one or more occasions the said L'Engle assured the said Overstreet that said Overstreet might have twenty years within which to pay the said Two Thousand Dollars mentioned in Exhibit 'A'. Upon one occasion said Overstreet and said Cunningham proposed to said Porcher L'Engle to pay the said sum of Two Thousand Dollars and take a deed to said property and were urged by said L'Engle to keep their money, and assured them that as long as he, the said L'Engle got the interest on said sum of Two Thousand Dollars promptly that would be all that he wanted, the said L'Engle acting in that behalf for his mother the defendant.

4. These plaintiffs allege that under and in pursuance of the said deed, Exhibit 'A' on or about the said 24th day of March, 1905, said plaintiffs Walter Overstreet and P. A. Cuningham did pay to the said defendant by and through her said attorney thereunto lawfully authorized the sum of Forty Dollars for the first of the forty dollar installments in said deed, Exhibit 'A' mentioned, which was then and there accepted by said defendant by and through her said attorney as and for and in payment of all moneys to be paid by said plaintiffs Walter Overstreet and P. A. Cunningham up to and inclusive of the 30th day of June, 1905, and the said Parcher L'Engle did then and there endorse at the foot of said instrument Exhibit 'A' the words and figures following, to-wit: 'Lease paid to June 30th, 1905, P. L'E.'

5. That thereupon and on or about the said 24th day of March, 1905, acting under and in pursuance of

the above mentioned instrument Exhibit 'A' the plaintiffs Walter Overstreet and P. A. Cunningham did enter into possession of the land in said instrument described and soon thereafter did erect a substantial fence enclosing the said land, and did otherwise improve the same.

6. These plaintiffs allege that from and after the said 30th day of June, 1905, on each of the several quarter days in said deed Exhibit 'A,' mentioned, the defendant acting by and through Porcher L'Engle her lawful attorney thereunto duly authorized, received each of the forty dollar payments in said deed mentioned to and inclusive of that payment falling due on the first day of January, A. D. 1910.

And plaintiffs aver that on the 30th and 31st days of March and on the 1st day of April, A. D. 1910, plaintiffs had made all payments for taxes and assessments on said lands, and otherwise in all respects performed on their part the said instrument Exhibit 'A' save as they were prevented from performing same by defendant as hereinafter set forth, and on said days and all conditions were fulfilled and all things happened and all times elapsed necessary to entitle these plaintiffs, or the plaintiffs Walter Overstreet and P. A. Cunningham, to a good title in fee to the land described in said deed, save as performance on the part of these plaintiffs or of the said plaintiffs, Walter Overstreet and P. A. Cunningham was excused by the conduct of the defendant hereinafter set forth. The several quarterly installments mentioned in said agreement Exhibit 'A,' were paid to defendant by and through her said attorney Porcher L'Engle by check of the said Overstreet in the sum of forty dollars each, but the said Porcher L'Engle instead of collecting the said checks from time to time as they were given, held the same or a great

part of them in his possession until the 24th day of March, 1910, about which time said L'Engle went to the bank on which they were drawn and presented the same for payment, but when payment thereof was tendered and about to be made by the teller of the bank upon which said checks were drawn said L'Engle withdrew the said checks and declined to accept the money on them. And plaintiffs allege that the withholding of the said checks by the said L'Engle for months and years was with the intent and purpose of enabling the said L'Engle by presenting them all at once when said Overstreet might have supposed that they had long since been paid to embarrass the said Overstreet and make it impossible for him to make the last payment of Two Thousand Dollars mentioned in said agreement, Exhibit 'A'. It is further alleged that at no time was any deed tendered to plaintiffs or any demand made on plaintiffs for any installment of interest, or for the said sum of Two Thousand Dollars mentioned in Exhibit 'A,' nor was any complaint made as to the manner of paying the said quarterly installments, nor was any forfeiture or revocation ever declared by said defendant, nor was possession of said land demanded by the defendant at any time prior to the tender of said Two Thousand dollars hereinafter alleged.

That is to say, on to-wit: the 30th day of March, 1910, plaintiffs sought the said Porcher L'Engle at his residence and at his customary place of business in the City of Jacksonville, Duval County, Florida, for the purpose of paying to said Porcher L'Engle the sum of Two Thousand Dollars in said deed, Exhibit 'A,' mentioned, and were informed that said L'Engle was absent from his home and from the City of Jacksonville. Whereupon, the said plaintiffs deposited said sum of Two Thousand Dol-

lars in the Florida National Bank a National bank and United States Depository then and there existing and doing business in the City of Jacksonville, with instructions to said bank to deliver the same to said L'Engle on the delivery to it of a warranty deed to these plaintiffs of the land mentioned in said instrument hereinbefore mentioned, and on the same day sent to the said L'Engle by Registered mail duly directed to said L'Engle at Jacksonville, Florida, a letter stating in substance that the said sum of money was held by the said Bank to be delivered to said L'Engle on the making of said deed, which said letter was duly delivered to the said L'Engle upon his return to the said City of Jacksonville. That on the first day thereafter, on to-wit: the first day of April, said plaintiff Walter Overstreet demanded of said L'Engle a deed of conveyance in accordance with the provisions of the instrument, Exhibit 'A,' above mentioned and again informed the said L'Engle that the above mentioned sum of Two Thousand Dollars had been placed in the Bank to be paid to said L'Engle because of the inability of the said Overstreet to find him the said L'Engle; and said L'Engle did then and there state to said Overstreet that the above mentioned instrument Exhibit 'A,' had lapsed and that no deed would be made thereunder.  That thereafter, to-wit: on the 4th day of April, 1910, the said L'Engle did offer to return to said plaintiff Overstreet the above mentioned quarterly payments of Forty Dollars each theretofore made by plaintiffs, or a large number of them amounting to the sum of to-wit: five or six hundred dollars or more and also the papers in connection with said Harris mortgage, if said Overstreet would surrender said agreement Exhibit 'A,' stating that he the said L'Engle had received the above mentioned letter notifying him of the deposit of

the said sum of Two Thousand Dollars as above set forth and that the rights of the plaintiffs under the above mentioned instrument, Exhibit 'A,' had expired, and that no deed would be made thereunder.

7.    Thereafter, to-wit; on or about the 8th day of April, A. D. 1910, plaintiff Walter Overstreet demanded of the defendant Charlotte J. L'Engle in person performance of the instrument, Exhibit 'A,' above mentioned, and said defendant Charlotte J. L'Engle did then and there promise and agree to and with said Walter Overstreet in behalf of the plaintiffs that she, the said Charlotte J. L'Engle, would by and through her said attorney Porcher L'Engle do what was just and honorable in the premises.   That thereafter, to-wit: on the 11th day of April, 1910 said Porcher L'Engle and the said defendant having taken no action in the premises, plaintiff Walter Overstreet did tender to the said defendant Charlotte J. L'Engle in person Two Thousand Dollars lawful money of the United State of America and demanded of said Charlotte J. L'Engle to execute and deliver to plaintiffs Walter Overstreet and P. A. Cunningham a deed of conveyance to the land above described, which the said defendant Charlotte J. L'Engle did then and there refuse to do in the absence of said Porcher L'Engle, but the said Charlotte J. L'Engle did then and there promise and agree with the plaintiff Walter Overstreet for and in behalf of himself and his co-complainants that she the said Charlotte J. L'Engle would cause her said attorney in fact Porcher L'Engle to do what was just and honorable in the premises.

8.    These plaintiffs allege that since on or about the 24th day of March, A. D. 1905, Walter Overstreet and P. A. Cunningham, or the plaintiffs Walter Overstreet, P. A. Cunningham and Arthur J. Cunningham have been

continuously in possession of the above described land; that during all of said time the same has been and still is enclosed by a substantial fence; and that during all or part of said time the same have been used for a pasture for cattle by these plaintiffs or those claiming by, through and under them; and that the same is now so used by them, plaintiffs or those claiming by, through or under them.

9. These plaintiffs aver that heretofore to-wit: on or about the —— day of ————, 1905, these plaintiffs Walter Overstreet and P. A. Cunningham did agree by word of mouth with plaintiff Arthur J. Cunningham for a valuable consideration, that said Arthur J. Cunningham should have a one-third interest in the rights of the said plaintiffs in and to said lands by reason of the instrument Exhibit 'A,' above mentioned; and these plaintiffs say that while no writing has ever been executed between these plaintiffs with respect to said land that the plaintiffs Walter Overstreet and P. A. Cunningham recognize the above mentioned oral agreement as of binding force and effect, and stand at all times ready to execute the same.

10. These plaintiffs aver that the said defendant though often requested has refused and neglected to make a deed of conveyance to the above described land to these plaintiffs or either or any of them, and still refuses and neglects so to do and pretends that by failure of the plaintiffs to pay said sum of Two Thousand Dollars on or before the 24th day of March, 1910, all rights of the plaintiffs in the above mentioned instrument, Exhibit 'A,' ceased and determined. Whereas, these plaintiffs aver that at all times hereinbefore mentioned they have believed and have acted upon the understanding and belief that the said Two Thousand Dollars might be paid

at any time while plaintiffs were not in default in the performance of their part of said instrument, Exhibit 'A,' above mentioned, that each of said forty dollar payments when made completed plaintiffs performance with respect thereto up to the next quarter day in said instrument Exhibit 'A,' mentioned, and that plaintiffs performance of said instrument, Exhibit 'A,' was completed up to and inclusive of the 31st day of March, 1910. And these plaintiffs aver that the said understanding of the plaintiffs was introduced or acquiesced in by the said Porcher L'Engle as evidenced by his above mentioned addendum to the said instrument, Exhibit 'A,' made by said Porcher L'Engle on the 24th day of March, 1905, in the words and figures following, to-wit: 'Lease paid to June 30th, 1905. P. L'E.,' meaning thereby to agree with plaintiffs that all payment had been made to that date and future installments were to be made quarterly from and following that date. Plaintiffs aver that from and after the said Forty Dollar payment on said 24th day of March, 1905 each of the several forty dollar payments by plaintiffs made was made with the understanding and belief on the part of the plaintiffs that the same operated to extend the said instrument, Exhibit 'A,' to the next quarter day in said instrument mentioned. Plaintiffs further say that the same is true construction of the said instrument, Exhibit 'A,' and further that by the acts and doings of the said defendant and her said attorney in fact Porcher L'Engle said defendant is precluded and estopped from contending to the contrary. Plaintiffs aver that for many weeks prior to the 24th day of March, 1910, these plaintiffs had on hand Two Thousand dollars available for the said Two Thousand Dollar payment mentioned in said agreement Exhibit 'A,' and on said day were ready, able and willing to make the said payment, but on

account of the understanding and agreement and acts of the said Porcher L'Engle as attorney in fact for the defendant hereinbefore set forth, plaintiffs did not regard it as important to pay the said amount of Two Thousand Dollars on said 24th day of March, 1910, and by the said acts and doings of said L'Engle plaintiffs were mislead into believing that it was wholly immaterial to tender said sum on said day or even on the 30th day of March, 1910, and that the time limit would not be insisted upon, and plaintiffs aver that by the said acts and doings of the said L'Engle the said time limit was and is waived.

11. And these plaintiffs do now offer to do and perform any matter or thing which in equity or good conscience they ought to do or perform, and especially pray leave to bring into this honorable court the above mentioned sum of Two Thousand Dollars and such other or further sums as this court shall require to be paid to the said defendant as condition precedent to the delivery of a deed to these plaintiffs by said defendant to said lands.

12. And plaintiffs thereupon pray that the said defendant may be decreed specifically to perform the said instrument, Exhibit 'A,' of the date of the 24th of March, 1905, and to convey to these plaintiffs or to the plaintiffs Walter Overstreet and P. A. Cunningham a good title in fee to the land described therein, plaintiffs hereby offering specifically to perform the said agreement on their part; and that for the purpose aforesaid all proper directions may be given and inquiries made.

13. Plaintiffs further pray that this court may decree the issuance of writs of injunction temporary and perpetual, restraining and enjoining the said defendant, her agents and attorneys and all persons claiming by,

through or under her from molesting or anywise interfering with plaintiffs possession of said land.

14. And plaintiffs further pray for the issuance of a subpoena to said Charlotte J. L'Engle in accordance with law and the practice of this honorable court, (plaintiffs hereby expressly waiving answer under oath), and such other, further and different relief as to this court may seem meet and proper.

> H. BISBEE,
> DUNCAN U. FLETCHER,
> GEORGE C. BEDELL,
> JOHN F. DODGE,
> Counsel for Plaintiff.

> BISBEE & BEDELL,
> FLETCHER & DODGE,
> Per G. C. B. SOLS,
> For Plaintiff.

## EXHIBIT A.

---

## LAW OFFICES OF PORCHER L'ENGLE,
## JACKSONVILLE, FLA.

THIS AGREEMENT, made this 24th day of March, nineteen hundred and five, between CHARLOTTE J. L'ENGLE, lessor of the first part, and WALTER OVERSTREET and P. A. CUNNINGHAM, lessee of the second part, both of Duval County, Florida.

WITNESSETH: That in consideration of Forty Dollars to me paid by the said party of the second part, I do hereby lease to the said party of the second part that cer-

tain tract or parcel of land in the County and State afore-
said;

Beginning at a point on the north side of the Jackson-
ville and Alligator Plank Road (so-called), being the S.
W. corner of lands formerly owned by A. J. Kingston;
thence North, 10 degrees West 990 feet to a corner on
the south side of a public road 25 feet wide; thence West-
erly, parallel to said Plank Road to the Northwest bound-
ary line of the Haddock estate tract, or the Western
Isaac Hendricks grant; thence South, 49 degrees West,
along said boundary line to the Three-Mile Branch;
thence down the Branch, on the East side thereof, to the
Plank Road, thence Eastwardly along the Plank Road to
point of beginning; containing 19¼ acres, more or less.

To have and to hold the land described to the party
of the second part, and to their legal representatives and
assigns, for five (5) years from the date thereof, provided
they or those holding through them shall pay me or to
my legal representatives or assigns, without demand,
Forty ($40.00) Dollars four times in each year, on the
first days of January, April, July and October, in ad-
vance, and shall pay all taxes and assessments on said
land and keep the buildings thereon insured for their
insurable value, loss payable to lessor, subject to eviction,
and to abrogation of this agreement, at will of lessor
after thirty days default of either rent, taxes, assess-
ments or insurance premiums. Time is of the essence of
this contract.

And I hereby covenant for myself and for my heirs and
assigns, upon the faithful performance of the above con-
ditions by the party of the second part, or by those hold-
ing through them, to execute and deliver to them at any
time within the period limited above, a good title in fee
to the land described herein, upon payment to me or to my

legal representatives of Two Thousand ($2,000.00) Dollars.   There being no lease in arrears.

And the said lessee for themselves and their legal representatives and assigns promises to pay said principal sum mentioned above and the said lease or rent herein stipulated on the dates named and all taxes and assessments, and if default be made therein for thirty days to surrender possession of said property to said lessor.

IN WITNESS WHEREOF the said lessor and lessee have hereunto set their hands and seals in duplicate this 24th day of March, A. D. 1905.   Signed, sealed and delivered before us.

Frank E. Jennings,
W. C. Fehrenback.

| | |
|---|---|
| Charlotte J. L'Engle | (SEAL) |
| By Porcher L'Engle, Attorney in in Fact, | (SEAL) |
| P. A. Cunningham, | (SEAL) |
| Walter Overstreet. | (SEAL) |

As to Overstreet and Cunningham,
J. C. Prosser,
C. F. Romedy.

Lease paid to June 30, 1905, P. L'E.

Exhibit 'A' endorsed on back as follows:

LEASE

C. J. L'Engle

to

Overstreet & Cunningham,

Term 5 Years.

Dated March 24, 1905.

Fee Simple $2,000.00.

Rent payable:

| | |
|---|---|
| January 1st ................. | $40.00 |
| April 1st .................. | $40.00 |
| July 1st ................... | $40.00 |
| October 1st ................ | $40.00 |

Law Offices

Porcher L'Engle,

Jacksonville, Fla.

Paid to June 30, 1905.

---

EXHIBIT 'B.'

No. 124.

Charlotte J. L'Engle,
            to
    Porcher L'Engle,
            Power of Attorney.

STATE OF FLORIDA,

    COUNTY OF DUVAL.

Know all men by these presents that I, Charlotte J.

L'Engle, widow and divisee, under the will of my husband, Francis F. L'Engle, late of said county, deceased, do hereby constitute and appoint my son, Porcher L'Engle, my true and lawful attorney in fact, and do fully authorize him to sign my name to all papers necessary in the transaction of my business, and especially to execute in my name all deeds, leases, notes, endorsements, releases, satisfactions of mortgages, receipts, discharges, contracts and acknowledgements, and to do and perform all things in reference to any property, real or personal or mixed, that I own in Duval County, Florida, or any other County or State, as fully and as legally in all respects as I myself could do, hereby ratifying and confirming all the acts and doings of my said Attorney.

In witness thereof, I have hereunto set my hand and seal this the 4th day of May, A. D. 1901.

Charlotte J. L'Engle.      (SEAL)

Signed, sealed and delivered before us.

    Edythe S. Clements,

    Elise H. Dancy."

The defendant demurred to the amended bill of complaint on the following grounds:

(1)   That said bill sets forth no facts entitling the complainants to the relief prayed or any relief.

(2)   That said bill seeks to alter and vary the terms of a written contract by alleged conversations and agreements made before the execution of the agreement attached to the amended bill and made a part thereof.

(3)   That said bill undertakes to construe the said agreement, whereas the same has been construed in this case by the Supreme Court of Florida and that decision is the law of this case.

(4)   Said bill contains a lot of impertinent matter in reference to alleged transactions between Walter Over-

street and Porcher L'Engle, which, if true, in no way concern this defendant.

(5) That the understanding and belief of the complainants, or any of them, or their construction of the contract raises no equity in favor of complainants.

(6) The allegation that the complainants remain in possession of the land and have enclosed and pastured the same gives them no equity for a specific performance.

(7) That said bill shows no offer of the complainants to pay, no tender of the money, and demand for deed until after the expiration of their option.

(8) That under the terms of the agreement attached to the bill the defendant was under no obligation to make any demand on the complainants or tender any deed, and the bill sets up no fact showing any waiver by the defendant of her rights under the said agreement, and no act of defendant preventing the said complainants from complying with the terms of the contract, and tendering the purchase price and demanding a deed before the expiration of their option."

The Chancellor overruled the demurrer and the defendant appealed.

*Chas. S. Adams, Alex St. Clair Abrams, Fred T. Myers, Blount & Blount & Carter,* and *W. A Blount, Jr.,* for appellant.

*Bisbee & Bedell* and *Fletcher & Dodge,* for Appellee.

WHITFIELD, C. J.—(*after stating the facts*).—On the former appeal from an interlocutory order, it was held that the contract on which specific performance is prayed is upon its face a lease of land for a specific

term with the privilege of paying for and procuring a conveyance of the land at any time within the period of the lease that the promise of the lessees to pay the purchase price is by other provisions of the contract so qualified as to the time and conditions of its payment that the promise cannot be enforced after the expiration of the lease period; and that the mere tender of the purchase price after the expiration of the lease period does not entitle the lessees to a specific performance of the contract that had expired by its own limitations, where no controlling equity is shown. And the opinion expressly indicates that if the payment of a part of the purchase price is shown, it might be a controlling equity entitling the complainants to specific performance even though the express contract time had expired a few days before the tender of the purchase price due was made, the complainants being in possession of the land. L'Engle v. Overstreet, 61 Fla. 653, 55 South. Rep. 381. This adjudication is the law of the case. The right of the complainants to so amend the bill as to show any controlling equity in their behalf was recognized by the former opinion herein, and that right does not appear to have been lost. The demurrer presents only the question of the sufficiency in law of the allegations of the amended bill asserting an equity for specific performance.

The demurrer admits the allegations of the amended bill of complaint to the effect that the purchase price agreed on for the conveyance of the land was $3,000.00 and that $1,000.00 of the amount was paid before the contract was executed. This fact gives to the complainants an equitable interest in the land and affords a controlling equity for enforcing a specific performance of the contract to convey, even though the contract time had expired by a few days, there being nothing to indi-

cate that the substantial rights in the land acquired by the complainants in paying a third of the purchase price had been in any way lost to them.

The allegations as to the payment of a third of the real purchase price of the land do not seek to vary the terms of the written contract, since that feature of the transaction was not covered by the contract; and proof of the real purchase price and of the payment of a part thereof and the enforcement of right resulting therefrom, do not in any way vary the terms of the written contract.

If an equity appears from the allegations of the bill of complaint, defects, if any, in the prayer do not render the bill insufficient for appropriate relief.

Many of the allegations of the amended bill of complaint are prolix and contain statements of contemplated evidence rather than of ultimate facts. This is not good practice. A bill of complaint should contain a clear and direct statement of the ultimate facts upon which relief is sought, and should not contain mere statements of evidence.

The order appealed from is affirmed.

TAYLOR, SHACKLEFORD and COCKRELL, J. J., concur.

HOCKER, J., absent because of illness.