T. W. HIGGINBOTHAM, *Plaintiff in Error*, VS. THE STATE OF FLORIDA, *Defendant in Error*.

Division A.

Opinion Filed May 31, 1924.
Petition for Rehearing Denied August 2, 1924.

1. Limiting Section 6099, Revised General Statutes, to mean that a change of venue without the consent of the accused, may be granted on application of the State, only when it is impossible to secure an impartial jury in the county where the crime was committed, it is constitutional.

2. Any attempt to deprive the accused of his right to be tried in the county where the crime was committed, except where it is practically impossible to procure an impartial jury, and this practical impossibility is established by an actual test, or where it is impossible to procure a jury where "there are not a sufficient number of registered voters to form a grand and petit jury," is in violation of the constitution.

3. An *ex post facto* law is one which, in its operation, makes that criminal which was not so at the time the action was performed; or which increases the punishment, or, in short, which in relation to the offense or its consequences, alters the situation of a party to his disadvantage.

4. A recess or adjournment of a court during the term, to a subsequent day in the same term, does not deprive the judge of the right to cause the court to be opened to transact any business that may properly come before it, before the date to which the recess was taken.

5. There is a distinction between an adjournment of a term of court *sine die*, and an adjournment or recess to another day in the same term. During the recess the term continues and the court remains in existence and it is still term time. If, however, litigants relying on an order of adjournment or a recess to a certain date, should absent themselves, or

allow their witnesses to depart, they might have cause of complaint if the court should reconvene before the time of adjournment, and litigants forced to trial unprepared, or a case called where the litigant had no notice that court would be in session at a date earlier than that to which the recess had been taken.

6. A judgment and sentence entered on Sunday is void.

A Writ of Error to the Circuit Court for Columbia County; M. A. McMullen, Judge.

Judgment reversed.

*L. E. Wade,* for Plaintiff in Error;

*Rivers Buford,* Attorney General; *J. B. Gaines,* Assistant; *J. R. Kelly,* State Attorney, and *Stafford Caldwell,* for the State.

BROWNE, J.—The plaintiff in error, T. W. Higginbotham, indicted by the grand jury of Madison County, Florida, charged with the murder of Martin Tabert in Dixie County, Florida, was convicted of murder in the second degree under the second count.

There are thirty-eight assignments of error. Some present the same questions but in a different form, or arising under objections to matters of procedure during the progress of the cause and some are abandoned. They can better be discussed by grouping some as to subjects, instead of taking them up seriatum, and this we will do.

The first and second assignments relate to the investigation and finding of the indictment by the grand jury of Madison County.

Section 6102, Revised General Statutes, which was in force at the time the investigation was made by the grand

jury of Madison County, provided: "Whenever the judge shall deem it impracticable or inexpedient to form a grand jury in any count for want of sufficient number of qualified jurors therein, or on account of any undue excitement or prejudice among the people, it shall be lawful for the grand jury of any county within the circuit to indict any person for crime committed in the county first mentioned, but the trial thereof shall be in the county where the crime was committed, unless the judge shall otherwise order upon motion of the defendant and on such motion the defendant may be tried in any county in the State."

This vests in the Circuit Judge very great power, but none too great for one holding the responsible position of Circuit Judge.

The statute does not prescribe any form of procedure by which he shall reach the conclusion that it is "impracticable or inexpedient to form a grand jury in any county for want of sufficient number of qualified jurors therein, or on account of any undue excitement or prejudice among the people."

Circuit Judges. are men of high character. They usually have an intimate knowledge of conditions prevailing in the counties of the circuit over which they preside, and have facilities for making investigation of conditions, and may do so, without affidavits. If the Circuit Judge had knowledge of conditions in Dixie County, to warrant him making the order in which he declared that it was "impracticable and inexpedient to form a grand jury to investigate this cause," he was warranted under the statute to do so.

In Curry v. State, 17 Fla. 683, a similar statute, that differed slightly in phraseology from Section 6102 of Revised General Statutes, now under consideration, was passed upon by this Court.

The former statute, which was Chapter 1637, Laws of .1868, provided that "whenever it shall be in the opinion of the judge," etc., while Section 6102 provides, "whenever the judge shall deem it" etc. In construing Chapter 1637, that court said, if the Circuit Judge "was of such opinion, it should have been embodied in an order and made part of the record."

Following that rule, the Circuit Judge in the instant case embodied in his order, that he was "of the opinion that it is impracticable and inexpedient to form a grand jury in Dixie County to investigate said cause, where it is alleged said crime was committed, on account of undue prejudice among the people of said county, favorable towards the above named defendant."

This procedure is not a change of venue, because the statute provides that after an indictment has been found in another county, "the trial thereof shall be in the county where the crime was committed, unless," etc.

After the indictment was filed in Dixie County, and before the case was called for trial, Section 6102 was amended by Chapter 9166, Acts of 1923, and instead of requiring the defendant to be tried in the county where the crime was committed "unless the judge shall otherwise order, upon motion of the defendant," it provided, "But upon the return of any such indictment, the same shall be certified and transferred to the county where the crime was committed, and trial thereon shall be had in any such county unless a motion for change of venue under the provisions of Sections 6099, 6100 and 6101, Revised General Statutes of Florida, relating to change of venue, should be made on behalf of the defense, or on behalf of the prosecution and such motion be granted upon order of court."

It is contended that this statute is unconstitutional, because in conflict with Section 11 of Bill of Rights.

The various statutes relating to change of venue, cited by the defendant in error, were before this court for consideration and construction in Hewitt v. State, 43 Fla. 194, 30 South. Rep. 795, and the second headnote to the opinion is as follows: ''The statutes in force in this State in reference to change of venue in criminal cases without the consent of the accused (Sections 2928, Revised General Statutes of 1920, and Chapter 4394, Laws of 1895), authorize the court to direct a change of venue when an impartial jury can not be secured in the county where the offense is alleged to have been committed, and limiting their meaning to authorize the change without the consent of the accused when it is impossible to secure an impartial jury in the county where the offense was committed, they are constitutional.''

The change of venue statutes were before this court again in O'Berry vs. State, 47 Fla. 75, 36 South. Rep. 440, and this court said: ''The above cited Section of the Declaration of Rights in the Constitution and all of the above cited statutes were before this court for consideration and construction in the case of Hewitt v. State, 43 Fla. 194, 30 South. Rep. 795. * * * We are of opinion that the conclusion reached in said case and the principles enunciated in the opinion rendered therein are correct.''

In so far as Chapter 9166, Acts of 1923, authorizes a change of venue from the county where the crime was committed, under the provisions of the general statutes regulating changes of venue, what was said by this court in Hewitt v. State, *supra,* and O'Berry v. State, *supra,* is applicable; and limiting it to the practical impossibility of securing an impartial jury in that county, we think it is constitutional. As we said in the case of Hewitt v. State,

43 Fla. 194, 30 South. Rep. 795, ''Where a trial by an impartial jury can be secured in the county where the crime was committed, the accused cannot be deprived of a trial there, even under sanction of legislative action.''

Limiting Chapter 9166, Acts of 1923, to mean that a change of venue without the consent of the accused, may be granted on application of the State, only when it is impossible to secure an impartial jury in the county where the crime was committed, it is constitutional.

It is contended that this amendment was an *ex post facto* law, and could not be applied in the trial of the defendant.

The definition of an *ex post facto* law now universally adopted in this country is ''One which, in its operation, makes that criminal which was not so at the time the action was performed; or which increases the punishment, or, in short, which in relation to the offense or its consequences, alters the situation of a party to his disadvantage.'' 6 R. C. L. p. 291, and authorities cited; 12 Am. & Eng. Ency. Law, (2nd ed.) p. 525, and cases cited.

Chapter 9166 so far as it relates to application for change of venue by the prosecution, does not come within any of these provisions, but relates only to procedure.

The case of Mathis v. State, 31 Fla. 291, 12 South. Rep. 681, seems to dispose of the contention that Chapter 9166, Acts of 1923, is an *ex post facto* law, with regard to this case.

In the Mathis case, the law fixing the number of peremptory challenges allowed a defendant in a special case, was changed from twenty to ten, while the case was pending. The defendant attempted to use the number of peremptory challenges allowed by law at the time the offense was committed, but the court held that he was only entitled to

the number allowed by the statute in force at the time of the trial.

In passing upon the question, this court said: ''It is entirely clear that the right to peremptory challenges appertains to the remedy, the procedure under which prosecutions are conducted, and not the essence of the offense itself. The legislature can at any time change the law in this respect, and such change will apply to prosecutions of offenses committed before as well as those committed after the change has been made. Such legislation is not *ex post facto.* Cooley's Const. Lim. 329.; Bishop on Statutory Crimes, §178; Thompson & Merriam on Juries, §165; People v. Mortimer, 46 Cal. 114; State v. Ryan, 13 Minn. 370.

The third assignment of error is abandoned.

We come now to the assignments that challenge the rulings of the court on the validity of the transfer of the cause from Madison to Dixie County.

This was not a change of venue, but a mere compliance with the requirements of Section 6102, Revised General Statutes of 1920, by transmitting the indictment to Dixie County, so that the trial should be in the county where the crime was committed.

Upon the presentation of the indictment to the court sitting in Madison County, the Circuit Judge ordered that it ''be filed and forthwith transmitted to Dixie County, Florida, there to be disposed of in accordance with law.''

Under this statute there are no formalities connected with transferring an indictment from the county where it was found, to the county where the crime was committed, and we must assume that the officer whose duty it was to obey the order of the court, performed his duty, and transmitted the indictment to Dixie County. This is not a violent assumption because we find the indictment

there, the prisoner arraigned on it, and other steps in the progress of the cause taken in accordance with law.

A similar order was made by the court to the effect that the sheriff of Dixie County convey T. W. Higginbotham, the defendant, to Cross City in Dixie County, and when the case was called in Dixie County he was there.

It would be as idle to contend that because the record does not show the manner in which Higginbotham was conveyed from Madison to Dixie County, that he was not properly there, and could not be tried, as it is to contend that because the record does not show how the order of the court to transmit the indictment to Dixie County was complied with, the cause was not properly there.

We will now consider the assignments that relate to the change of venue from Dixie County to Columbia County. The application for change of venue was made by the State Attorney on the grounds that it was "impossible for a fair and impartial trial of said case to be had in Dixie County."

The ground of the motion is not in accord with the law laid down by this court, as to how a change of venue may be made on motion by the State. The proper basis for such a motion, is that "it is practically impossible to obtain an impartial jury in the county where the crime was committed." We will pass that by, however, as a more serious question is presented in the proceedings upon which the change of venue was granted, and in the order of the court granting the change.

The change of venue was opposed by the defendant, on the grounds, (1) that a fair and impartial jury could be obtained in Dixie County; (2) that there was no issue joined wherein a change of venue could be had; (3) because there were approximately seven hundred voters and jurors in Dixie County of whom a jury may be had who

will fairly and impartially try the issues between the State of Florida and the defendant T. W. Higginbotham, and (4) because the court failed to test whether a jury could be obtained in Dixie County to try the cause.

Section 11 of the Declaration of Rights of the Constitution of Florida provides "in all criminal prosecutions the accused shall have the right to a speedy and public trial, by a fair and impartial jury, in the county where the crime was committed."

This provision of the Constitution received consideration by this court in the case of Hewitt v. State, 43 Fla. 194, 30 South. Rep. 795, where it was held that statutes authorizing a change of venue on application by the State over the objection of the defendant, were constitutional where they limited the right to grant such change of venue "to the impossibility of securing an impartial jury in the county."

In the Hewitt case there was a previous trial in which one of the defendants was acquitted and the jury disagreed as to the others.

When the case again came on for trial, "after the exhausting of two special venires; one for one hundred jurors and the other for twenty-five, and the issuance of another for thirty jurors," the court made an order in which it found that a qualified jury could not be obtained in Bradford County, and changed the venue to Duval County. The defendants interposed no objection to the order. Because the defendant did not object to the change of venue and because the court put the question of obtaining an impartial jury in Bradford County "to actual test," it was held, that it was not error to grant the change. The effect and extent of the validity of the statute relating to change of venue in criminal cases is fully discussed in that case, where it was said "the pro-

vision of our Constitution in reference to the right of trial by an impartial jury in the county where the crime is committed is an important one to the accused. At common law a defendant had a right to be tried in the county in which the offense was alleged to have been committed, where he was surrounded by the influences of a good character if he had established one, and where the witnesses were accessible for the purpose of a trial. If an impartial trial could not be had in such county, the practice was to change the venue to some other county where such trial could be obtained. The abuse of the right to change the venue to the detriment of the accused would be serious to him, and no doubt constitutional provisions like ours were designed to permanently secure this right of trial by an impartial jury in the county where the offense is alleged to have been committed. Some courts have held that the guaranty is not only of an impartial trial, but also a trial in the county where the offense was committed, and that it was not competent for the legislature to provide for a transfer to another county for any cause without the consent of the accused. Armstrong v. State, 1 Cold. 337; Kirk v. State, Ibid, 344; State v. Knapp, 40 Kan. 148, 19 Pac. Rep. 728. Where a trial by an impartial jury can be secured in the county where the crime is committed, the accused can not be deprived of a trial there, even under sanction of legislative action.''

In the case of O'Berry v. State, 47 Fla. 75, 36 South. Rep. 440, this matter was again before the court, and the doctrine of the Hewitt case affirmed and strengthened. There it was very pertinently said, ''It was not made to appear to the trial court, and we are in no way apprised, how many of the six hundred jurors in said county were disqualified from acting as jurors in the case at bar. The

fact that it might have been difficult or would have consumed considerable time to have procured a qualified jury to have tried the defendant is not sufficient to warrant a change of venue, against the consent of defendant.

The matter again came before this court in Ashley v. State, 72 Fla. 137, 72 South. Rep. 647.

There an actual test was begun, and about 120 talesmen examined, without procuring a jury, and upon motion of the State Attorney, the venue was changed to Dade County.

When the case came to this court, it was said: ''In this case while the examination of the talesmen summoned under the several venires and the affidavits of the State Attorney showed difficulty and delay in attempting to get an impartial jury in the county, there are affidavits stating that there are over 1500 persons in the county who may be subject to jury duty, and giving other facts that at least tend to indicate the practicability of getting a proper jury in the county, even though perhaps several hundred of those persons had been called in securing juries in previous trials of the accused in the county for the same offense. The showing made does not clearly and affirmatively establish the impossibility of obtaining an impartial jury in the county to try the accused on this charge. In this view the order changing the venue is an unauthorized denial to the defendant of his organic right to a trial 'by an impartial jury, in the county where the crime was committed.' ''

Again, ''Where an application in a criminal prosecution for a change of venue from the county where the crime was committed, is made by the prosecuting attorney, and the accused objects thereto, the matter should be tested in some way so as to make it clearly appear that it is practitcally impossible to obtain an impartial jury to

try the accused in that county. O'Berry v. State, 47 Fla. 75, 36 South. Rep. 440.''

From the very strong and clear language in Section 11 of the Declaration of Rights, and the decisions of this court applying and enforcing it, it would seem that no consideration of convenience, or delay incident to making an actual test to determine the *practical impossibility* of obtaining an impartial jury in the county where the crime was committed, can relieve the court of the obligation to make an actual test. It would require an extraordinary showing, and it should be an exceptional case, when the duty of making an *actual test* could be waived. Such a showing was not made in this case.

It does not appear from the record, that the trial judge was convinced from the showing made by the State, that it was ''*practically impossible* to obtain an impartial jury in Dixie County,'' and he did not so find. His finding was, ''The court being of the opinion that it is impracticable to get a qualified jury to try this case, in Dixie county, and that a fair and impartial trial of said cause could not be had in said County,'' etc.

The Constitution gives an accused the absolute right to a trial ''in the county where the crime was committed.'' By the decisions of this court, he cannot be deprived of that right without his consent, except where it is ''practically impossible to obtain an impartial jury in the county where the crime was committed'' and it is the rule in this jurisdiction, that this practical impossibility should be determined only after an actual test has been made to obtain an impartial jury.

If we approve the granting of the change of venue in this case, we modify the Constitutional guarantee and impair the Constitutional rights of the accused by requiring him to be tried in a county other than that in which the crime was committed, when in the opinion of the judge,

it is "impracticable" but not "practically impossible" to get a qualified jury to try the case.

The word "impracticable" is too comprehensive, too vague, too indefinite, to be used as a test in determining when an accused may be deprived of his Constitutional right to a trial in the county where the crime was committed.

The court erred in granting the change of venue upon the showing made, without having made an actual test to determine if it was practically impossible to obtain an impartial jury in Dixie County and for that the judgment must be reversed and a new trial granted.

While this disposes of the case, we will rule on those assignments of error that raise questions that may come up in a subsequent trial of this cause.

The 16th assignment of error is abandoned.

The 17th assignment of error relates to the court sustaining an objection to this question propounded by the defendant to the witness Padgett, "Have you been talked to by Mr. G. Grimson of North Dakota and Mr. Kneeshaw of North Dakota about this case?" There was no abuse of discretion by the Circuit Judge in sustaining the objection to this question, for it does not appear from the record how the refusal to allow the witness to answer that question, harmed or could have harmed the defendant, whether he answered it in the negative or in the affirmative. Of itself, it would not have discredited him, nor shown that he had any interest in the case, or that he had been improperly influenced in giving his testimony. The question as propounded did not show its materiality, nor did counsel state to the court what was its purpose; whether it was to discredit or to impeach him and we cannot say that under the decisions of this court, that the ruling was an abuse of the sound discretion of the trial judge. Padgett v. State, 64 Fla. 339, 59 South. Rep. 946;

Revels v. State, 64 Fla. 432, 59 South. Rep. 951; Martin v. State, 68 Fla. 18, 66 South. Rep. 139.

The 18th assignment of error is abandoned.

The next group of assignments relate to objections to certain portions of the testimony of the State's witness Walter Lyles. On passing on the objections, the court ruled, that unless the materiality of the testimony objected to was shown, it would be stricken later. At the conclusion of this witness' testimony a motion to strike was denied.

The witness testified to having seen the defendant Higginbotham whipping some one who was lying on the ground, at the place and at the time that Martin Tabert was whipped. He also testified that he heard Higginbotham curse the man whom he was whipping.

It is undisputed in the record that Higginbotham at that time and place whipped Martin Tabert, and that Martin Tabert was the only person whipped by Higginbotham on the night of January 27, 1923, but the testimony was contradictory as to the number of blows he administered; whether he cursed him while administering the whipping; or whether the whipping was so severe as to cause him to writhe upon the ground, and this testimony was competent and material to corroborate the State's witnesses on these points.

There was no error in these rulings.

Assignments 22nd and 23rd relate to these two questions propounded to the witness Walter Lyles ,on cross examination, "Still you are willing to come up here and swear a man's life away on testimony of that character," and "Because he was the whipping boss. you will swear that he did this whipping although it might cost him his life."

These questions are in the nature of an argument with

the witness and did not tend to elicit any material testimony, and objections to them were properly sustained.

The 25th, 27th and 28th assignments relate to the refusal of the court to strike the testimony of the witnesses Graham Ward, John S. Bass and W. J. Jefferson because they could not identify the man who was being whipped.

What we have said with regard to similar objections made to the testimony of Walter Lyle disposes of these assignments.

The 29th assignment relates to the court sustaining the objection by the State to this question propounded to the witness Eddie Waters, "Did Mr. Higginbotham personally seem as kind to Tabert as he did to the other convicts?"

This line of testimony was objected to by the State and the objections sustained.

The comparative degree of kindness evinced by Higginbotham towards Tabert and any other convict, or how Higginbotham treated Tabert on other occasions, was immaterial to the issue being tried. There was no error in excluding this testimony.

The 30th assignment of error is abandoned.

The 31st, relates to the court convening in Columbia County on June 4th, after it had previously taken a recess to June 5th.

It appears from the record that on the 19th of May, and during the Spring Term of the Circuit Court of Columbia County, the court "took a recess or adjournment to June 5, 1923."

On June 4th, the Circuit Judge entered an order in which it was stated that it "was necessary and expedient" that the court "reconvene on June 4th," and it was "therefore ordered that the court be reconvened on June 4th at

10 o'clock a. m., instead of June 5th as previously ordered.''

A recess or adjournment of a court during the term, to a subsequent day in the same term, does not deprive the judge of the right to cause the court to be opened to transact any business that may properly come before it, before the date to which the recess was taken.

There is a distinction between an adjournment of a term of court *sine die*, and an adjournment or recess to another day in the same term. During the recess the term continues and the court remains in existence and it is still term time. If, however, litigants relying on an order of adjournment or a recess to a certain date, should absent themselves, or allow their witnesses to depart, they might have cause of complaint if the court should reconvene before the time or adjournment, and litigants forced to trial unprepared, or a case called where the litigant had no notice that court would be in session at a date earlier than that to which the recess had been taken. That, however, was not the condition here, when the court convened on June 4th, a day sooner than that fixed by the order to take the recess. It is not contended that the defendant was injured in any way by the convening of the court on June 4th, but reliance is placed on the technical right of the court to convene on the 4th instead of the 5th of June.

We find no error in the court revoking the order of adjournment, and reconvening before the time first fixed. See Bowen v. Stewart, 128 Ind. 507, 26 N. E. Rep. 168; 28 N. E. Rep. 73; Wharton v. Sims, 88 Ga. 617, 15 S. E. Rep. 771; Cole County v. Dallmeyer, 101 Mo. 57, 13 S. W. Rep. 687.

The thirty-first assignment relates to holding the term of court in Columbia County at which Higginbotham was tried and convicted. As this question will hardly arise in

the subsequent trial of this case, it is unnecessary to pass upon it.

The 32nd assignment of error challenges the validity of the judgment and sentence, because entered on Sunday.

The verdict was found and recorded on Saturday, July 7th. The court then took an adjournment until 9 o'clock Sunday, July 8th, at which time sentence was imposed.

The rule is well settled that a judgment and sentence entered on Sunday is void. As the judgment is reversed on other grounds, we need say no more on this point, as it is not probable that a Circuit Judge will hereafter hold court on Sunday.

The 33rd assignment of error relates to the overruling of the defendant's motion for a new trial. In discussing this assignment, the plaintiff in error devotes much of his brief to demonstrating that the verdict was contrary to, and against the weight of the evidence.

These questions were submitted to the jury and resolved against the contention of the plaintiff in error. From a very careful reading of the record, we cannot say that the jury was influenced by considerations other than the testimony.

We do not deem it necessary or advisable to pass upon the effect of the orders of the court denying the defendant's motion for a new trial and fixing the time for presenting and settling his bill of exceptions, upon his Constitutional right to have his case reviewed by this court, beyond saying, that it would be arbitrary and unjust if a judge could adjourn his court until Sunday, and then dispose of motions for new trials and make orders with regard to bills of exceptions, which would be nullities, and thereby deprive litigants of their right of appeal.

For the error in granting a change of venue from Dixie County, on motion by the State, over the objection of the

defendant, without having made an actual test to decide that it was practically impossible to obtain an impartial jury in that county, the judgment is reversed and a new trial granted.

TAYLOR, C. J., AND ·ELLIS, J., Concur.

WHITFIELD, P. J., AND TERRELL, J., Concur in the opinion.

WEST, J., Dissents.

## On Petition for Rehearing.

BROWNE, J.—The petition for rehearing urges that the court overlooked and failed to consider that the application for a change of venue by the State was made on the ground, contained in Section 6099, Revised General Statutes, that "a fair and impartial trial cannot be had in the county where the crime was committed."

This was not overlooked, and it was intended to be covered in the opinion, but as it seems not to be clear to the petitioner, we will discuss it more fully.

Section 11 of the Bill of Rights of the Constitution of Florida, provides: "In all criminal prosecutions the accused shall have the right of a speedy and public trial, by an impartial jury, in the county where the crime was committed."

In the case of O'Berry v. State, 47 Fla. 75, 36 South. Rep. 440, the court set out in its opinion all the statutes relating to change of venue, including Section 2927 Revised Statutes of 1892, which provided: "When it shall appear to the satisfaction of the court by affidavit that a fair and impartial trial cannot be had in the county where the crime was committed, the court may direct the ac-

cused to be tried in some adjoining county where a fair and impartial trial may be had, but the accused shall be entitled to but one change of the place of trial.

It is true, that in that case, and in Hewitt v. State, 43 Fla. 194, 30 South. Rep. 795, changes of venue were granted because "it was impracticable to get a qualified jury to try the case," but the rule of organic law laid down in those cases, applies as well to the Act of 1868, Chapter 1637, Sub-Chapter 13, Section 13, relating to a change of venue on the ground that a "fair and impartial trial" cannot be had in the county where the crime was committed, as to the Act of 1845, No. VII, page 22, Territorial Acts 1845, relating to a change of venue on the ground "that it is impracticable to get a qualified jury" to try the case in the county where the crime was committed. Both Acts are condensed in Section 6099 Revised General Statutes of 1920.

In the O'Berry case, *supra*, after embodying in the statement, all the statutes relating to change of venue, said: "The above cited section of the Declaration of Rights in the Constitution *and all of the above cited statutes* were before this court for consideration and construction in the case of Hewitt v. State, 43 Fla. 194, 30 South. Rep. 795. The second headnote of the opinion in that case is as follows: 'The *statutes* in force in this State in reference to change of venue in criminal cases without the consent of the accused (sections 2928 and 2929, Revised Statutes, and chapter 4394, laws of 1895), authorize the court to direct a change of venue when an impartial jury cannot be secured in the county where the offense is alleged to have been committed, and limiting their meaning to authorize the change without the consent of the accused when it is impossible to secure an impartial jury in the

county where the offense was committed, they are constitutional.'

"We are of the opinion that the conclusion reached in said case and the principles enunciated in the opinion rendered therein are correct." (Italics are ours.)

It seems quite clear that this court held in these cases that any attempt to deprive the accused of his right to be tried in the county where the crime was committed, except where it is practically impossible to procure an impartial jury, and this practical impracticability is established by an actual test, or where it is impossible to procure a jury where "there are not a sufficient number of registered voters to form a grand and petit jury," is in violation of the Constitution. This doctrine we adhere to and affirm.

The petition for rehearing is denied.

TAYLOR, C. J., AND ELLIS, Concur.

WHITFIELD, P. J., AND TERRELL, J., Concur in the opinion.