328 So.2d 260 (1976)
Colon WARD and Wiley Ward, Petitioners,
v.
STATE of Florida, Respondent.
No. AA-307.
District Court of Appeal of Florida, First District.
March 11, 1976.
*261 W. Fred Turner, Lynn Haven, Ronald B. Deal, Chipley, and H. Clay Mitchell, Jr., Pensacola, for petitioners.
Robert L. Shevin, Atty. Gen., and Wallace E. Allbritton, Asst. Atty. Gen., for respondent.
SMITH, Judge.
We stayed proceedings in the trial court while reviewing, by common law certiorari, petitioners' claim that the trial court departed from essential requirements of law in transferring this criminal case from Washington County to Calhoun County for trial.
Petitioners were charged in Washington County with buying, receiving or concealing stolen property there, in violation of § 811.16, F.S. 1973. Court was convened in Washington County to impanel a jury and try the case. After several veniremen had been examined on voir dire, in which evidence of rather pervasive newspaper accounts appeared, the prosecutor received and advised the court of information that a prospective juror had been threatened by close personal friends of petitioners. The court then privately interrogated approximately 15 of the remaining members of the venire and discovered that "no less than five people had been approached either directly or indirectly and promised punishment or gain of reward if they saw that they were seated as a jury panel or petit jury and sat in trial of this matter [and] that they would be rewarded if they voted right and punished if they didn't vote correctly." The court noted that Colon Ward had previously been convicted of a federal jury tampering charge.
In granting the State's motion for change of venue pursuant to Rule 3.240, R.Cr.P., the court recited that "it would be impossible to try the Defendants in a fair and impartial manner with this jury venire" and that "the Court does not believe that a fair and impartial trial of this cause can be conducted in Washington County... ." The case was transferred for trial in Calhoun County.
Since 1885, the Florida Constitution has guaranteed to persons accused of crime "a speedy and public trial by impartial jury in the county where the crime was committed." Art. I, § 16, Fla. Const. (1968); § 11, Declaration of Rights, Fla. Const. (1885). That guaranty is a legacy of the jurors' *262 ancient role, until the latter part of the seventeenth century, as witnesses to the disputed facts:
"The jury, then, was a body of neighbours called in, either by express law, or by the consent of the parties, to decide disputed questions of fact. The decision upon questions of fact was left to them because they were already acquainted with them, or if not already so acquainted with them, because they might easily acquire the necessary knowledge. For this reason it has been said that the primitive jury were witnesses rather than judges." 1 Holdsworth, History of English Law 156 (1908).
Among the substantial benefits to the accused of a jury drawn from the "vicinage" was a trial where the accused
"was surrounded by the influences of a good character if he had established one, and where the witnesses were accessible... ." Hewitt v. State, 43 Fla. 194, 198, 30 So. 795, 796 (1901).
That Parliament enacted laws authorizing trials for treason in any county in England, which British authorities threatened to employ against recalcitrant colonists, "was one of the grievances which led to the separation of the American colonies from the British empire." Swart v. Kimball, 43 Mich. 443, 449, 5 N.W. 635, 638 (1880). Explicit guaranties of trial by a jury of the county or vicinage were therefore written into the original constitutions of Maryland, Massachusetts, New Hampshire, Virginia, Pennsylvania and Georgia Murphy v. Supreme Court, 294 N.Y. 440, 455, 63 N.E.2d 49, 55, 161 A.L.R. 937, 946 (1945). The local constituency of the jury was thought to be so fundamental that it was held to be implied in the right of jury trial itself. Swart v. Kimball, supra, 43 Mich. at 448, 5 N.W. at 637.
The Florida Supreme Court's first interpretation of the guaranty in the 1885 Constitution was entirely consistent with the deep concern displayed by the colonists more than one hundred years before. In Hewitt v. State, supra, the Court upheld the transfer of a murder trial from Bradford County to Duval on the State's motion. A statute permitted transfer when it was "impracticable" to obtain a qualified jury in the county where the offense was allegedly committed, and the Court held it not violative of § 11 of the Declaration of Rights, "limiting it to the impossibility of securing an impartial jury in that county." Hewitt, 43 Fla. at 199, 30 So. at 796.
Noting that the trial court in Hewitt exhausted a venire of 125 persons without obtaining a qualified jury, the Court in O'Berry v. State, 47 Fla. 75, 36 So. 440 (1904), reversed a trial court determination that it was impracticable to obtain a qualified jury in Osceola County, where O'Berry allegedly committed cattle theft, because his guilt or innocence had been widely debated during his candidacy for the legislature, it had been the subject of public comment and litigation in a replevin action concerning the cattle and O'Berry's trial for larceny of another animal had been generally discussed. All those facts, the Supreme Court held, did not demonstrate that a qualified jury could not be obtained from the more than 600 citizens of Osceola County who were eligible for jury duty:
"The fact that it might have been difficult or would have consumed considerable time to have procured a qualified jury to have tried the defendant is not sufficient to warrant a change of venue, against the consent of defendant." O'Berry, 47 Fla. at 86, 36 So. at 443.
In Ashley v. State, 72 Fla. 137, 72 So. 647 (1916), the Court again reversed a trial court's order transferring a cause on grounds of the impracticability of obtaining a qualified jury and held:
"... the matter should be tested in some way so as to make it to clearly appear that it is practically impossible to obtain an impartial jury to try the accused *263 in that county." Ashley, 72 Fla. at 140-41, 72 So. at 648.
The Court held that the affidavits filed by the state attorney failed to demonstrate that a qualified jury could not be obtained from the 1500 persons who were subject to jury duty.
Again, in Higginbotham v. State, 88 Fla. 26, 101 So. 233 (1924), the Supreme Court reversed another transfer for trial, holding:
"... it is the rule in this jurisdiction that this practical impossibility should be determined only after an actual test has been made to obtain an impartial jury." Higginbotham, 88 Fla. at 37, 101 So. at 237.
This Court has twice applied the rule of Hewitt, O'Berry, Ashley and Higginbotham: in reversing Rhoden v. State, 179 So.2d 606 (Fla.App. 1st, 1965), in which the trial court had determined it impracticable to obtain an impartial Hamilton County jury after exhausting a panel of 34, all summoned to duty by the defendant's brother, the sheriff; and in reversing Davis v. State, 256 So.2d 565 (Fla.App. 1st, 1972), in which Judge Wigginton dissented on the ground that an actual attempt to obtain an impartial jury is not essential under Rule 1.240, now Rule 3.240, R.Cr.P.
The State's motion in this case was accompanied by affidavits satisfying the literal requirements of Rule 3.240, R.Cr.P. As Judge Wigginton stated in Davis, the Rule contains no explicit requirement that the availability of impartial jurors be tested by attempting to select a jury when the State moves for a transfer. It merely states:
"(d) The court shall consider the affidavits filed by all parties and receive evidence on every issue of fact necessary to its decision. If the court grants the motion it shall make an order removing the cause to the court having jurisdiction to try such offense in some other convenient county where a fair and impartial trial can be had."
The procedure by which the court is thus directed to determine the matter has undergone only slight modification since passage of the Criminal Procedure Act of 1939. See ch. 19554, § 175, Fla.Laws 1939; § 8663 (182), Fla.Comp.Gen.Laws (1940 Supp.); § 911.05, F.S. 1941-1969; Rule 1.240, Cr.P.R., 33 F.S.A. (1967).
The trial judge in this case encountered shocking evidence of an insidious effort to threaten or buy prospective jurors. The climate in which the Washington County venire assembled was affected by newspaper publicity. The accused are evidently well known and influential in the county. One of them was previously convicted for jury tampering. Certainly by conventional standards of proof it was adequately shown that the availability of an impartial jury, at least from that venire, was problematical. Under the circumstances, there was reason to be uneasy even concerning those veniremen who professed impartiality. See Irvin v. Dowd, 366 U.S. 717, 727-28, 81 S.Ct. 1639, 1645, 6 L.Ed.2d 751, 759, (1961).
Strong as the evidence was of the difficulty of the task, the impossibility of obtaining an impartial jury was not demonstrated by an exhaustive effort to select such a jury from among the citizens of Washington County. The court examined only 13 veniremen in open court, and only three of those were excused for cause suggesting partiality. The court privately identified five more, out of approximately 15 of the remaining venire, whose ability to sit as jurors had been compromised by improper overtures. We believe that the court's attempt to impanel an impartial jury in Washington County was insufficient. We are without authority to retreat from our Supreme Court's pronouncements which are so rooted in history and which have been so explicitly followed by our own Court.
*264 The terms of Rule 3.240, R.Cr.P., permit the trial court to pass on a defendant's motion for change of venue on affidavits and other evidence pertinent to the matter in issue. But when the State seeks to move the trial because it asserts an impartial jury cannot be had, and the defendant objects, there is an obvious conflict between the Rule's procedures and the rigid requirements of Hewitt, O'Berry, Ashley and Higginbotham, laid down when no rule or statute prescribed how the availability of an impartial jury should be tested. We must assume that our Supreme Court would test its own rule of procedure by the same strict constitutional standard it applied in the cited cases to the earnest efforts of trial courts to determine the disputed issue. By those standards, an exhaustive and unsuccessful attempt to select an impartial jury from Washington County is a necessary predicate for changing venue on application of the State over the defendants' objection.
The order of the trial court is quashed and the case is remanded for further proceedings in the Circuit Court of Washington County.
MILLS, J., concurs.
BOYER, C.J., dissents.
BOYER, Chief Judge (dissenting).
I respectfully dissent. The majority opinion is certainly well reasoned and rooted in history. However, I am of the view that no constitutional right had been transgressed and that the able trial judge sufficiently and properly complied with the mandate of Rule 3.240, R.Cr.P., which was promulgated and adopted by the Supreme Court of Florida with the obvious intent, it seems to me, of modifying the historical rule of precedent relied upon by the majority.
I would approve the action of the trial judge here reviewed and deny the writ sought by petitioners.