GEORGE W. JONES, Plaintiff in Error, *v.* THE PEOPLE OF THE STATE OF NEW YORK, Defendant in Error.

The Supreme Court may, upon application of the prosecution, issue a writ of certiorari, to remove an indictment into that court from the Oyer and Terminer.

As to whether a certiorari may be brought for that purpose without the consent and in spite of the authority of the Supreme Court, *quære*.

It is not necessary to give notice of application for the writ.

It is discretionary with the Supreme Court after having obtained jurisdiction of the case either to quash the writ upon cause shown, to remand

the case to the Oyer and Terminer, or to proceed to its disposition as in other cases pending before it.

Accordingly *held*, that an order of the Supreme Court refusing to quash such a writ was not reviewable here.

(Argued November 10, 1879 ; decided November 25, 1879.)

APPEAL from order of the General Term of the Supreme Court, in the third judicial department, affirming an order of Special Term, denying a motion on the part of the plaintiff in error to quash a writ of certiorari.

The plaintiff in error was indicted for perjury. Upon application of the district attorney, made without notice, an order was granted at Special Term directing the issuing of a writ of certiorari removing the indictment from the Court of Oyer and Terminer, in and for the county of Saratoga, into the Supreme Court.

A motion was thereupon made at Special Term, on behalf of the prisoner, to set aside said order and to quash the writ issued under it, which motion was denied.

*J. P. Butler*, for plaintiff in error. The Supreme Court had no authority to issue a writ of certiorari to remove the indictment into that court from the Oyer and Terminer. (Code Civil Procedure, §§ 3, 4, 5, 217, 219, 235 ; *People* v. *Stone*, 5 Wend., 39, 40, 41 ; 2 R. S., 732 ; Laws of 1788, vol. 2, p. 249 ; Const., art. 6, §§ 6, 9; 3 R. S. [6th ed.], 279, § 24 ; 2 id. [4th ed.], 881, 916 ; Laws of 1847, chap. 280, § 22 ; 1 R. S. [4th ed.], 58; id. [6th ed.], 94, §§ 6, 7; Code, § 20; New Code, §§ 217, 235; Barb. Cr. Law, 295; Blk. Com., 270; Modern Pleader, 8, 9, 10; Crompton's Practice, 26; Fourth Institute, 162; Modern Pleader, 17; 1 Hill, 183.) The re-arrest of Jones was without a shadow of authority. (1 Bacon Abb., 350; *Certiorari*, title A ; 1 Chitty Crim. Law, 377; 5 D. & E., 626; 6 id., 191; 2 Strange, 900, 1209; Cowper, 18; Cromp's. Prac., 26; Declaration of Rights, 1776; Webster's Dicty.; 1 Bl. Com., 231 [old ed.]; 4 id., 261, 320; 4 Hume's Hist. Eng., 346, 498, 499; 1 R. S. [6th ed.] 44, § 35; Reviser's Notes, 3

R. S., 847; part 4, chap. 2, Reviser's Notes, 42; 2 R. S., 132, § 29; 1 R. L., 339, § 15; Laws of N. Y., 1788, vol. 2, p. 249; 4 Parker, 190; 5 Term Rep., 626; 1 Bacon's Ab., 350; *People* v. *O'Lany*, 4 Park., 190; *King* v. *Inhabs., etc.*, 6 Term R., 194; 3 Bos. & Puller, 354; New Code, § 4; 2 R. S., 132, § 29; id., 130, § 12; 48 Penn. R., 56.)

*Nathaniel C. Moak*, for defendant in error. The people have an absolute right to remove an indictment into the Supreme Court, independent of any statutory provision. (Const., art. 1, § 17; Code, § 217; *R.* v. *Eaton*, 2 Term R., 89; *R.* v. *Lewis*, 4 Burr., 2458; Arch. Cr. Pl. & Ev. [17th Eng. ed.], 95; *Com.* v. *Capp*, 48 Penn. St., 53, 56; Hawk, b. 2, chap. 27; § 27; 1 East, 203 3, note d.; Hand's Prac., 37; Dick. Sess., 382; *Rex* v. *Thomas*, Mich. Term, 1815; 2 Chitty's Rep., 136; 1 Chitty Cr. Law [5th Am. ed.], 378; *Anon. Cases*, Temp. Hardres [Lee's ed.], 165, and note ; *Rex* v. *Stannard*, 4 Term, 161; *Lempriere's Case*, 1 Mod. Rep., 41; 2 Hawk. Pleas Crown [Curwood's ed.], 401, § 27; *R.* v. *Inhabs. of Clare*, 4 Burr., 2458; *R.* v. *Stannard*, 4 Term, 161; *R.* v. *Burgess*, 1 Kenyon, 135; 1 Burn's Justice, 618. 634 [30th ed.]; *R.* v. *Allen*, 15 East, 333, 342; *R.* v. *Anon.*, 2 Chitty, 136; *R.* v. *Hobe*, 5 T. R., 542; *R.* v. *Davies*, id., 626; *R.* v. *Cumberland*, 6 id., 194; *Queen* v. *Spencer*, 9 Ad. & Ell., 485; S. C., 36 Eng. C. L. R., 264; *King* v. *Boultbee*, 4 Ad. & Ell., 498; S. C., 31 Eng. C. L., 226.) The district attorney may remove a criminal cause to the Supreme Court by *certiorari* as a matter of *course* and of *right*. (*People* v. *Vermilyea*, 7 Cow., 109, 140, 141; *People* v. *Baker*, 3 Park., 187, 188, 191; 1 Chitty Cr. Law [5th Am. ed.], 378, note 1; *Baker* v. *Munro*, 6 Cow., 396.) The case is to be tried at the circuit like other issues pending in the Supreme Court. (*People* v. *Ruloff*, 3 Park., 401, 409; Code, §§ 2, 4, 217, 232, 976, 1056; 2 R. S., 409, §§ 1, 2; 2 Edm. St., 426.) The writ being a matter of absolute right in behalf of the

people there is no such thing as the improvident granting of one in that behalf. (1 Chitty Cr. Law [5th Am. ed.], 379, 380.) The application for the writ is an *ex parte* proceeding; it is not necessary that the prosecutor should have notice of it. (Arch. Cr. Pl. & Pr. [17th Eng. ed.], 97; 1 Burn's Just. [30th Eng. ed.], 634; *Simons* v. *Dinsdale*, 2 Exch., 533; *Com.* v. *Capp*, 48 Penn. St., 53, 56; *People* v. *Vail*, 6 Abb. [N. C.], 206, 211.) If when the writ of *certiorari*, removing the case, was granted, Jones was out on bail, and no one had a right to arrest him, that is a question which does not affect the validity of the *certiorari* or restrict the legal effect thereof. (2 Hawk. Pl. Cr. [Curwood's ed.], 416, § 83; 3 R. S. [6th ed.], 1022, § 57.)

CHURCH, Ch. J. The question whether a certiorari may issue by the Supreme Court, at the instance of the prosecution to remove an indictment into that court from the Oyer and Terminer, is the only question involved upon this appeal. If this power exists, it is discretionary with that court after having obtained jurisdiction of the case to quash the writ upon cause shown, or remand the case to the Oyer and Terminer, or proceed to its disposition as in other cases pending before it. The constitution recognized the existing Supreme Court with general jurisdiction in law and equity, (art. 6, § 6), and the New Code declares that such jurisdiction "includes all the jurisdiction which was possessed and exercised by the Supreme Court of the colony of New York at any time, and by the Court of Chancery in England on the 4th day of July, 1776" (§ 217), with such exceptions and limitations as have been created and imposed by the constitution and laws of the State. The constitution also preserves all compatible parts of the common law in force April 19, 1775.

The Supreme Court of the colony of New York, was invested with the jurisdiction of the King's Bench, Common Pleas, and Exchequer in England "to all intents and purposes whatsoever." (Ordinance of 15th May, 1699.)

" The Court of King's Bench, " Mr. Chitty says, " having a general superintendency over all courts of inferior jurisdiction, may award a certiorari to remove the proceedings from any of them, except some particular statute or charter invest them with absolute judicature " (1 Chitty Cr. Law, 374), and therefore certiorari would lie to justices of Oyer and Terminer and gaol delivery, and he cites several authorities. The same doctrine is laid down by Blackstone. He also says that " a certiorari may be granted at the instance of either the prosecutor or the defendant, the former as a matter of right, the latter as a matter of discretion. " (4 Black. Com., 321.) The authorities are numerous that this power existed and was frequently exercised by the King's Bench in England, and that it was transmitted by the constitution of 1777, and subsequent constitutions to, and is now possessed by the Supreme Court of this State. I am not prepared however, nor is it needful to determine that a district attorney, or the attorney general may without the consent, and in spite of the authority of the court bring a certiorari removing a criminal cause from the Oyer and Terminer to the Supreme Court. It is unnecessary to determine that question, as this writ was granted by the court on application, and such I think is the better practice, but if issued as a writ of right the Supreme Court would clearly have power to remand the case or quash the writ in its discretion.

The contention of the learned counsel for the prisoner is that the courts of England exercised this power solely in obedience to the king's prerogative, and that it was not a part of the common law, and was abrogated by the constitution of 1777, which declares that " the supremacy, sovereignty, and prerogatives claimed and exercised by the king of Great Britain, and his predecessors over the colony of New York, and its inhabitants, or repugnant to this constitution be, and they are hereby abrogated and rejected."

Without undertaking to inquire into the particular powers or matters to which this provision applies, it seems quite clear that it does not apply to those judicial remedies, which

had become incorporated into the jurisprudence of the mother country, or the powers ordinarily exercised by the courts, although they may have had their origin in the prerogatives of the crown, unless they are repugnant to our constitution or laws. The writ of mandamus is a prerogative writ, but it was exercised by the courts before the revolution, and was transmitted to us by virtue of the constitutional provisions referred to, and there are many others of the same character. I conclude therefore that this was one of the powers conferred by the constitution itself. The judiciary act of 1847 seems to recognize the power by providing that "writs of error, and *certiorari* may be brought to remove judgments, and suits, and proceedings from any court of Oyer and Terminer, and Court of Sessions in all cases where such writ may now be brought to remove judgments, and suits, and proceedings from the courts of Oyer and Terminer, and from the present courts of General Sessions of the peace." (Laws of 1847, p. 324, § 17.) That the power exists, has been the understanding of the bar, and the practice of the courts in this and other States, although there are but few reported cases. (*People* v. *Vermilyea*, 7 Cow., 118, 140; *People* v. *Baker*, 3 Park. Cr. R., 187; *Com'th* v. *Roby*, 12 Pick., 498; *Com'wth* v. *Capp*, 48 Penn. St., 56.) We should hesitate about abrogating this practice even if we entertained doubts of its correctness, after the uniform acquiescence in its existence for so long a period. The Legislature has full power over the subject, and perhaps it should be exercised as it has been, in respect to the writ, when applied for by a defendant. (2 R. S., 731.) In the *People* v. *Stone* (5 Wend., 40), it was decided that a court of Oyer and Terminer could grant a new trial, and in the opinion its jurisdiction is spoken of as *exclusive*, but in *People* v. *Judges of Dutchess Oyer and Terminer*, (2 Barb., 282), a contrary doctrine was held, and in an elaborate opinion by STRONG, J., the authority of the Supreme Court over the Oyer and Terminer, including the power of removing criminal cases is maintained and upheld. I am unable,

to find either in the constitution or laws of the State, any warrant for holding that the Court of Oyer and Terminer is a court of general and exclusive jurisdiction, and I concur in the conclusion arrived at in the case last cited. I agree fully with the learned counsel for the prisoner that in general indictments should be tried in the criminal courts provided by law, and it is argued that it is incongruous to the system adopted for the trial of criminal cases, where a lay element is incorporated in the constitution of the court, to transfer such trials to the civil calendar when they are triable by a single judge, but I think the power exists, and the answer to suggestions against it is that either in the first instance on the application for the writ of certiorari, or upon a motion to quash or supersede the writ the court has full power to prevent any injustice, and after our long experience, I am not aware that abuses have been complained of. Being in the Supreme Court the Code provides that all issues of fact for trial by a jury in the Supreme Court shall be tried at the circuit. (§ 976.) There is no practice requiring notice of the application for the writ. The authorities are uniform against it. The validity of the order for the re-arrest of the prisoner is not involved in this appeal.

According to these views the quashing of the writ was discretionary with the court below, and hence the order was not appealable, and the appeal must be dismissed.

All concur.

Appeal dismissed.