In the Matter of JOHN J. MURPHY, Appellant, against EXTRAORDINARY SPECIAL AND TRIAL TERM OF THE SUPREME COURT Appointed to be Held in the County of New York et al., Respondents.

Argued May 22, 1945; decided July 19, 1945.

*Henry Epstein* and *Daniel H. Prior* for appellant. I. The decision below is in conflict with the express terms, purpose and history of section 355 of the Code of Criminal Procedure. II. Since the enactment of the Code it has been considered beyond question that section 355 bars the People from obtaining a change of venue. III. It is the purpose of sections 355 and 344 of the Code to guarantee to the accused a substantial unilateral advantage. (*United States* v. *Johnson*, 323 U. S. 273; *Olive* v. *State*, 11 Neb. 1; *State* v. *Knapp*, 40 Kan. 148; *Swart* v. *Kimball*, 43 Mich. 443; *Watt* v. *People*, 126 Ill. 9; *State* v. *Crinklaw*, 40 Neb. 759; *Gut* v. *Minnesota*, 9 Wall. [U. S.] 35.) IV. The statutory history confirms that the Legislature intended to exclude the prosecution from any right to obtain a change of the place of trial. (*People* v. *Vermilyea*, 7 Cow. 108; *People* v. *Webb*, 1 Hill. 179; *People* v. *Baker*, 3 Abb. Pr. 42; *Jones* v. *The People*, 79 N. Y. 45; *People* v. *Farini*, 239 N. Y. 411; *People ex rel. Hirschberg* v. *Orange Co. Ct.*, 271 N. Y. 151; *People ex rel. Kohut* v. *Hendrickson*, 249 App. Div. 528, 276 N. Y. 563; *The Inhabitants of the County of Cumberland* v. *The King*, 3 Bos. & Pul. 354.) V. At common law the prosecution could not move for a change of venue. The common law of England did not allow the place of trial to be changed in criminal cases without the consent of the accused. (*Rex* v. *Clendon*, 2 Str. 911; *Rex* v. *Harris*, 3 Burr. 1330; *Regina* v. *Barrett*, Ir. Rep. 4 C. L. 285; *Queen* v. *Conway*,

7 Ir. C. L. 507; *Queen* v. *Phelan,* 14 Cox C. C. 579; *King* v. *Holden,* 5 B. & Ad. 347, 354; *Mylock* v. *Saladine,* 1 Bl. W. 480.) VI. The common law rule on horizontal removal has not been impaired by any decision in this State having standing as precedent. (*Glinnan* v. *Judge of Recorder's Court,* 173 Mich. 674.) VII. The great weight of authority in sister States recognizes the common-law rule against horizontal removals at the instance of the prosecution. (*People* v. *Powell,* 87 Cal. 348; *City of Chicago* v. *Knobel,* 232 Ill. 112; *State ex rel. Mabbitt* v. *Smith,* 55 Ind. 385; *Glinnan* v. *Judge of Recorder's Court,* 173 Mich. 674; *State* v. *Dyer,* 139 Mo. 199; *State* v. *Crinklaw,* 40 Neb. 759; *State* v. *Sautelle,* 66 N. H. 488; *In re Nelson,* 19 S. D. 214; *State* v. *Howard,* 31 Vt. 414.) VIII. The Appellate Division erred in holding section 355 to be unconstitutional, if given its patent meaning. (*Matter of Estate of Stilwell,* 139 N. Y. 337, *Goldfinger* v. *Feintuch,* 276 N. Y. 281; *People ex rel. Durham R. Corp.* v. *La Fetra,* 230 N. Y. 429; *Matter of Berkovitz* v. *Arbib & Houlberg,* 230 N. Y. 261.)

*Nathaniel L. Goldstein, Attorney-General* (*Harris B. Steinberg, George P. Monaghan, Stanley H. Fuld* and *Herbert Stern* of counsel), for respondents. I. The order transferring the place of trial of the indictment was within the power of the Supreme Court. (*Comm.* v. *Davidson,* 91 Ky. 162.) II. At common law, the Court of King's Bench had the inherent power to grant a change of place of trial at the instance of the prosecution. (*Rex* v. *Norwich,* 1 Str. 177; *Rex* v. *Harris,* 3 Burr. 1330; *Rex* v. *St. Mary's,* 7 T. R. 735; *Rex* v. *Nottingham,* 4 East 208; *Rex* v. *Holden,* 5 B. & Ad. 347; *Queen* v. *Conway,* 7 Ir. C. L. 507; *Regina* v. *Phelan,* 14 Cox C. C. 579; *State* v. *Miles,* 43 Idaho 46; *Comm.* v. *Reilly,* 324 Pa. 558; *Barry* v. *Truax,* 13 N. D. 131.) III. The Supreme Court of New York has always had the inherent power to change the place of trial of a criminal case on the People's motion. (*Jones* v. *The People,* 79 N. Y. 45; *People* v. *Vermilyea,* 7 Cow. 108; *People* v. *Webb,* 1 Hill 179; *People* v. *Bodine,* 7 Hill 147; *People* v. *Baker,* 3 Abb. Pr. Rep. 42; *People* v. *Farini,* 239 N. Y. 411; *People* v. *Page,* 182 Misc. 10.) IV. The adoption of the Code of Criminal Procedure has not abrogated the Supreme Court's jurisdiction to change the place of trial. (*Matter of Lyons* v. *Goldstein,* 290

N. Y. 19; *People* v. *Farini,* 239 N. Y. 411; *People* v. *Wilson,* 151 N. Y. 403; *People* v. *Adler,* 140 N. Y. 331; *People* v. *Palmer,* 109 N. Y. 110; *People ex rel. Weeks* v. *Platt,* 173 App. Div. 451.)   V. Nor does section 355 of the Code, by implication, abrogate the court's inherent power to change venue upon the People's application. (*People* v. *Farini,* 239 N. Y. 411; *Matter of Lyons* v. *Goldstein,* 290 N. Y. 19; *Bell* v. *Niewahner,* 54 App. Div. 530; *Mussen* v. *Ausable Granite Works,* 63 Hun 367; *People* v. *Coughtry,* 58 Hun 245, 125 N. Y. 723; *Alexander* v. *Bennett,* 60 N. Y. 204; *Stokes* v. *People of the State of N. Y.,* 53 N. Y. 164; *People* v. *Damon,* 13 Wend. 351; *Negro Jerry* v. *Townshend,* 2 Md. 274.)

LEHMAN, Ch. J.   The Grand Jury of the County of Albany, drawn and impaneled to serve at an Extraordinary Term of the Supreme Court for the County of Albany, appointed to be held by order of the Governor, returned an indictment against the appellant containing twenty-nine counts charging crimes alleged to have been committed in the County of Albany. The Attorney-General then moved at the Extraordinary Term in Albany for an order changing the place of trial of the indictment from the Supreme Court, Albany County, to a term of the Supreme Court in another county on the ground " that it is impossible to obtain a fair and impartial trial in Albany County ". The application was granted and an order was made and entered on November 13, 1944, that " the place of trial of the indictment herein be and the same hereby is removed from the Supreme Court, County of Albany, to the Supreme Court, County of New York ". An appeal attempted to be taken from the order of removal was dismissed by the Appellate Division of the Third Department on the ground that the order is not appealable. (*People* v. *Murphy,* 268 App. Div. 1009.) The Governor appointed an Extraordinary Special and Trial Term to be held in the County of New York " for the purpose of trying the indictments, or any amendments thereto, heretofore filed in the County of Albany against John J. Murphy " and other defendants " which were transferred for trial to the County of New York ". Then the appellant moved in the Appellate Division of the First Department " For an order pursuant to the provisions of Article 78 of the Civil Practice Act, and of Sections

1295 and 1300 thereof, prohibiting and restraining the Extraordinary Special and Trial Term of the Supreme Court of the State of New York appointed by proclamation of the Governor dated December 20, 1944, to be held at the Criminal Courts Building, 100 Centre Street, in the County of New York, on the 29th day of January, 1945, from acting without authority and without jurisdiction and in excess of jurisdiction, and from proceeding with the trial of the indictment against the petitioner presented by a Grand Jury of Albany County to the Extraordinary Special and Trial Term of the Supreme County held in the County of Albany on the 28th day of July, 1944, and from entertaining any proceedings in relation to said indictment.'' The application was unanimously denied by the Appellate Division and the petition dismissed. The appeal is taken to this court by permission of the Appellate Division. -

The question presented upon the application for an order in the nature of prohibition is whether the order removing the place of trial of the indictment to another county is a nullity because made upon a motion which the court had no power to entertain and upon affidavits and evidence which the court had no power to consider. If the court had power to entertain the motion, error in appraising the probative force of the evidence submitted to sustain the claim of the People that an impartial trial cannot be had in the County of Albany, and even insufficiency of such evidence as matter of law, would not so taint the order of removal as to make it a nullity though such defects might so taint an order that it would inevitably be reversed upon appeal if the order were subject to review by an appellate court. Upon the application for an order in the nature of prohibition pursuant to article 78 of the Civil Practice Act, the only question presented to the Appellate Division and decided by it was whether the Supreme Court has power upon the application of the Attorney-General to order that an indictment returned by the Grand Jury of Albany County charging a crime committed in Albany County be tried in the County of New York before a jury drawn and selected from New York County upon an allegation and even proof that an impartial trial cannot be had in the County of Albany. If, under the law of the State of New York, an indictment *must* be tried by a jury of the county in which the indictment was

found unless the action is removed to another county *upon the application of the defendant* no order made by the Supreme Court upon the application of the Attorney-General can confer upon the Extraordinary Term appointed to be held in the County of New York a jurisdiction denied to it by law. In such case an order prohibiting the Extraordinary Term in New York from trying an indictment found in the County of Albany would be proper. Upon this appeal we consider no other question.

The Legislature has in express terms provided that " *on the application of the defendant* " a criminal action prosecuted by indictment may be removed:

" 1. From a county court to a term of the supreme court held in the same county, for good cause shown;

" 2. From the supreme court, or a county court, to a term of the supreme court held in another county, on the ground that a fair and impartial trial cannot be had in the county where the indictment is pending." (Code Crim. Pro., § 344.)

No statute provides that a criminal action prosecuted by indictment may be so removed upon the application of the People and against the opposition of a defendant, but the Attorney-General successfully contended in the Appellate Division that, at common law, the Court of King's Bench had inherent power to grant a change of place of trial at the instance of the prosecution; that the Supreme Court possesses all the powers of the Court of King's Bench, and that the express grant to the Supreme Court of power to remove a criminal action " on the application of the defendant " should not be construed as a restriction upon the common-law power of the court to remove a criminal action from one county to another upon the application of the People or upon the court's suggestion. We are told, too, that such a statutory restriction would deprive the Supreme Court of part of its established common-law jurisdiction, in violation of the provision of the Constitution of the State of New York that " The supreme court is continued with general jurisdiction in law and equity * * *." (Art. VI, § 1.)

In *People* v. *Farini* (239 N. Y. 411), the question was presented whether the express grant to the Supreme Court of power " *on the application of the defendant* " to remove a criminal action " from a county court to a term of the supreme

court *held in the same county,* for good cause shown '' as provided in subdivision 1 of section 344 of the Code of Criminal Procedure, was intended to deprive the Supreme Court of power *upon the application of the People* to remove to itself in the same manner a criminal action from a county court in the same county. Recognizing that such a limitation upon the power of removal of the Supreme Court would reverse '' a practice that has been general since the adoption of the Code and that was concededly allowed before that time,'' we said that, '' to effect such a change the intention of the Legislature should be expressed in clear and unmistakable terms.'' The court, accordingly, decided that this statutory provision, read in connection with other provisions of the Code of Criminal Procedure and construed in the light of legal history, is '' simply a regulation of the method of removal when the application is made by the defendant. It is not an attempt by implication to deprive the Supreme Court of the well-understood power it had always possessed where the application was made by the prosecution '' (p. 415). (See, also, *Jones* v. *The People,* 79 N. Y. 45.) The Appellate Division in the decision which we review upon the instant appeal felt constrained by the authority of our opinion and decision in *People* v. *Farini (supra)*, to hold that even though subdivision 2 of section 344, like subdivision 1, covers only applications made by a defendant for the removal of a criminal action, the Supreme Court of this State retains a similar power to remove, upon the application of the prosecution, a criminal action '' from the supreme court, or a county court, to a term of the supreme court *held in another county,* on the ground that a fair and impartial trial cannot be had in the county where the indictment is pending.''

Nowhere except in section 344, subdivision 1, can a legislative intention be found to deprive the Supreme Court '' of the well-understood power it had always possessed '' to remove upon the application of the prosecution a criminal action from a county court to a term of the Supreme Court held in the same county, and in *People* v. *Farini (supra)*, the court passed upon the effect only of section 344. If nowhere in the Code of Criminal Procedure except in section 344 could there be found indications of a legislative intent to limit to cases where the application is made by a defendant, the power of the Supreme Court to

remove an indictment to another county on the ground that a fair and impartial trial cannot be had in the county where such indictment is pending and if such power of removal had previously been exercised by the Supreme Court upon the application of the prosecution in accordance with a practice " that has been general since the adoption of the Code and that was concededly allowed before that time ", there would, of course, be force in the suggestion that what we said and decided in *People v. Farini* is controlling. In truth, however, the Legislature has declared in section 355 of the Code of Criminal Procedure that " an issue of fact must be tried by a jury of the county in which the indictment was found, unless the action be removed, by order of the supreme court, into another county, as provided in the second subdivision of section three hundred and forty-four." Section 355 is far more than a " regulation of the method of removal when the application is made by the defendant." It is a mandate, framed in words that permit no other construction, that an issue of fact in a criminal action *must* be tried by a jury in the county where an indictment was found, unless the indictment is *removed to another county in accordance with the provisions of subdivision 2 of section 344 of the Code of Criminal Procedure,* i.e., " on the application of the defendant." That mandate is a guarantee to a defendant of a right to a trial by a jury of the " vicinage " which, as we shall show hereafter, was generally if not invariably accorded to a defendant under the English practice; though the writ of certiorari to remove an action from an inferior court to the Court of King's Bench there to be tried by a jury of the vicinage where the alleged crime was committed was " demandable in criminal cases as of right " by the Crown. (See 1 Holdsworth " History of the English Law " 228.) That right of an accused to a trial by a jury of the vicinage was carefully safeguarded in Colonial days when for good cause shown a charge of felony was brought by certiorari or Crown information to the Supreme Court which sat only in New York or Albany. Indeed that right was regarded as so vital that it was guaranteed by the Constitutions of many and perhaps a majority of the original thirteen States of the Union. Section 355 is a legislative affirmation that the Supreme Court may not deny to an accused the right to a trial of an indictment by a jury of the county where the indictment was found, — a right which

was generally accorded to an accused both in England and in America under common-law practice, though both in England and in New York high courts and judges of distinction had asserted that they had power, in extraordinary cases, to direct that the trial be held in a county other than that in which the indictment was found even when the defendant did not apply for such a directive. If the courts did possess such power it was certainly not a power which was " well understood " or generally exercised.

The power of the Court of King's Bench to remove to itself, by writ of certiorari, indictments and other criminal proceedings from inferior courts was established beyond challenge early in its history, but even though the Court of King's Bench sat at Westminster it was not bound to try indictments there. Removal of an indictment to the Court of King's Bench from an inferior court of limited territorial jurisdiction did not necessarily deprive a defendant of any right he would otherwise have had to be tried by a jury of the vicinage. " The court of king's bench * * * was divided in the *crown* side, and a *plea* side. And on the crown side, or crown office, it takes cognizance of all criminal causes, from high treason down to the most trivial misdemeanor or breach of the peace. Into this court also indictments from all inferior courts may be removed by writ of *certiorari, and tried either at the bar, or at nisi prius, by a jury of the county out of which the indictment is brought.*" (4 Blackstone Comm. 265.) (Italics throughout this opinion are ours.)

The practice has been described by Holdsworth in his monumental work: " Indictments and other proceedings from inferior courts may be removed into the court of King's Bench by writ of certiorari. This will be done when a fair trial cannot be had before such inferior court, or where some difficult question of law is likely to arise. In the fifteenth and sixteenth centuries the number of criminal cases of all kinds so transferred was considerable. Such trials when held in term time are called trials at bar, i.e., they are held at the bar of the court before the judges of the court sitting *in banc*. But the court has power, instead of trying these cases itself, to send them for trial into the counties where the crimes were committed, or to order them to be heard by the itinerant justices

sitting at nisi prius. * * * " (1 History of English Law, 213). (See, also, 2 Hale on Pleas of the Crown, 210; 1 Chitty on Criminal Law, 157 [1826 ed.]; 3 Coke's Inst., 3d Part 27 [1680 ed.]; 1 Stephen on History of the Criminal Law, 95, 196.)

That practice, with some statutory regulation, has in England been continued down to modern times. " When an indictment or inquisition has been removed by *certiorari* into the High Court (Queen's Bench Division) it may either

"(a.) be tried before the High Court by a jury of the county from which it was removed, or

"(b.) be sent by the said Court to be tried as a *nisi prius* record in the county from which it was removed, or

"(c.) be sent by the said Court to be tried at the Central Criminal Court." (Stephen on Law of Criminal Procedure [1883], art. 93.)

This distinction between the effect of removal of a cause by certiorari from an inferior court to the Court of King's Bench at Westminster and the effect of a rule or order of the King's Bench that the cause shall be tried before a jury drawn from a county or vicinage other than that in which the crime was committed and out of which an indictment has been drawn is not always observed by judges in their dicta in judicial opinions or by commentators. It must be kept constantly in mind in considering the authorities cited in the excellent briefs submitted to us by both sides. The power to remove for trial in Westminster was frequently exercised. Indeed, it has been said that records of the period from 1477 to 1547 make it appear " that the Court was largely occupied at that time by trying all sorts of criminal cases arising in every part of the country." (1 Stephen on History of the Criminal Law in England, 96.) It is significant that nevertheless the diligent research of counsel has failed to disclose, during that period, any record of a rule or direction, made in a felony case where a defendant was *entitled* to a trial by jury, that the defendant be tried by the court sitting *en banc,* without a jury drawn from the vicinage or county where the crime was committed, nor has a record been found where such a rule or direction was sought. As late as Coke's time it appears that trial of an accused at Westminster outside of the county where the alleged crime was committed was " warranted by the course of the common law "

only if the jury was drawn from the county where the crime was committed (3 Coke's Inst., 3d Part, 27, 34, 80 [1680 ed.]). Though it is said that "an instance in which accused persons were to be tried at the Gaol Delivery of Newgate, because they were too powerful in their own district, appears on the Gaol Delivery Roll, 25 Edward III., Huntingdon, where there is a writ to that effect, directed to the Sheriff of Cambridge" (1 Pike on History of Crime in England, References and Notes, p. 479), no reported case between the 14th and 18th centuries, and no reference to such a case in any of the well known commentaries on the law of England, has been found where it was asserted that the Court of King's Bench could direct that a felony charge might be tried by a jury of a different county because no impartial jury could be drawn in the county where the crime was committed. Though we may assume that charges of misdemeanor might be tried "at bar" by the Court of King's Bench at Westminster in cases where an accused was not entitled to a trial by jury and where an impartial trial could not be had before an inferior court sitting without a jury in the town or county where the alleged crime was committed, yet at least until *Rex* versus *Harris et al.,* (3 Burr. 1330 [1762], also reported in 1 W. Blackstone's Reports, 378, 379) there was grave doubt whether a court had power to order the trial of a felony charge or even an information charging a misdemeanor before a jury drawn from another county.

That case is frequently cited as authority for the proposition that at common law, by an entry of "a suggestion on the roll with a *nient dedire*" that a fair trial could not be had in the county where the alleged felony occurred, the Court of King's Bench could direct the trial to be held in another county. In 1754 the Court of King's Bench, in *Rex* v. *Burton* (also known as the *Nottingham* case), had denied a motion for a change of venue of an information made by the Crown on the ground that all the burgesses of Nottingham were interested in the litigation and that there was not a sufficient number of other freeholders available to form a trial jury. In *Rex* versus *Harris et al.,* decided by the same court eight years later, an application was made, not for a change of venue of an information but for the entry of "a suggestion on the roll with a *nient dedire*". The court denied the application and apparently recognized that, as

decided in *Rex* v. *Burton,* it had no power to grant an application for a change of venue even of an information, but Lord MANS-FIELD said of that case: "The Motions are very different, to change the Venue, which is saying, that the Cause of Action or Indictment arose elsewhere; and, as in the present Case, to continue the same Venue, and by a Suggestion on the Roll, to have a Trial in another County. For though a fair Trial can't be had in the proper County, yet the Venue still remains, to direct the Court in their Choice of a neighbouring County " (as reported in 1 W. Blackstone's Reports, 378, 379). He also said that " *notwithstanding* the locality of some sorts of actions, or of informations for misdemeanors, if the matter can not be tried at all, or can not be fairly and impartially tried in the *proper* county, it shall be tried in the *next adjoining* county " (as reported in 3 Burr. 1330, 1333). In no case decided before the end of the 18th century that has been called to our attention or that we have found did the Court of King's Bench grant a change in the county from which a jury shall be drawn for the trial of a charge of felony.

Indications that the courts of England did, nevertheless, have such authority at common law during the period when New York was an English colony, may be found not only in dicta of distinguished judges in England during that period but also in later decisions or opinions of English and Irish courts. In *King* v. *Nottingham* (4 East 208), (1803) the Court of King's Bench was called upon to construe an act which made provision for removing criminal actions or proceedings from a limited juris- diction to the " county at large " not only where the case had been brought by certiorari from an inferior court to the King's Bench but also where the removal was made by a court of oyer and terminer. The question presented was whether a requirement in the act that the party at whose instance the removal to the " county at large " was made should post a bond applied to a case which had first been removed to the Court of King's Bench by certiorari, Lord ELLENBOROUGH said that a construction that the requirement did apply to such cases " would abridge the power that this court had before the Act of directing an indictment to be tried in the next adjoining county in cases where justice required it." Again in *The King* against *Holden* (5 B. & Ad. 348), the court in a case previously removed to it by

certiorari, rejected an application by a defendant indicted for a capital felony that a suggestion be entered directing a trial in another county, but DENMAN, C. J., said: "I apprehend that the power of changing the place of trial whenever it is necessary for the purpose of securing, as far as possible, a fair investigation, is a part of the jurisdiction of this Court; and that that power may be exercised, where it is absolutely necessary, in cases of felony. Instances have occurred in which this has been done for the purpose of removing the trial from limited jurisdictions; but there does not appear to be any in which it has been done with respect to a county at large: and I should think such a proceeding could not be necessary where the removal must be from one great county to another * * * still, if I thought it necessary for the purpose of securing a fair trial, I should certainly be disposed to grant this application." (See, also, *The Queen* v. *Conway*, 7 Ir. C. L. 507 [1858] and *The Queen* v. *Phelan*, 14 Cox C. C. 579, Irish Q. B. Div. 1881.)

We repeat that during the entire period when New York was a colony of the English crown no case has been found where the Court of King's Bench granted an application for the trial of a charge of a felony before a jury drawn from a county other than the county where the alleged felony was committed, though in some cases judges of such distinction that their considered dicta are at times accepted as authoritative pronouncements of the law, have asserted that the power to grant such an application existed at common law and would be exercised in exceptional circumstances where otherwise an impartial trial could not be had. Text writers, too, have at times ignored the distinction between the trial of an information at a place outside of the county where the crime was committed and the trial of an indictment for a felony before a jury drawn from a different county. Even though at common law the Court of King's Bench may have had the power, in exceptional cases, to direct that an indictment for a felony be tried before a jury drawn from a county other than that in which the indictment was found, it still remains the fact that such a trial would not ordinarily be "warranted by the course of the common law" and would deprive a defendant accused of a felony of his generally recognized right to a trial by jury of the vicinage.

That right to a trial by jury of the vicinage was claimed by the colonists in New York and in the other American colonies as one of the fundamental rights of free men. In New York there was no discussion whether the Supreme Court which exercised in the colony the powers exercised by the Court of King's Bench in England might even in exceptional cases direct the trial of an indictment for felony before a jury not drawn from the county where the indictment was found. "The Charter of Liberties" enacted by Dongan's first assembly in 1683 and approved by the Duke of York, but forthwith disallowed upon his accession to the throne, provided that "all Tryalls shall be by the verdict of twelve men, and as neer as may be peers or Equalls And of the neighbourhood and in the County Shire or Division where the fact shall arise or grow." (1 Colonial Laws N. Y. 111.) The Act of 1691, repealed by the Crown six years later, provided that all "tryalls shall be by the verdict of Twelve men * * * of the neighbourhood of the place where the fact shall arise or grow". (1 Colonial Laws N. Y. 246.) The Judicature Acts of 1691 and 1692 (1 Colonial Laws N. Y. 226, 303) also contained provisions that no man's rights or properties should be determined (except as facts were admitted or there had been default) unless the facts be found by the verdict of twelve men of the neighborhood. The same safeguard was also contained in "Bellomont's judiciary ordinance." (Goebel & Naughton, Law Enforcement in Colonial New York, p. 603.)

The "Bellomont Ordinance" of 1699 defined and regulated the jurisdiction of the courts of New York during the remainder of the colonial period. It provides in part: "*And it is further ordained* * * * That no persons right or property shall be by any of the aforesaid courts determined, except where matters of fact are either acknowledged by the parties, of judgment confessed, or passeth by the defendant's fault, for want or plea or answer, unless the fact be found by the verdict of twelve men of the neighbourhood, as it ought to be done by the law." (See Revised Laws of 1813, Van Ness & Woodworth, Vol. 2, Appendix XI.) Under that ordinance "certiorari was employed to bring up indictments already found in cases in which superintendence by the central authorities was believed to be necessary. Great care was taken that all such cases be tried by jury, and by a jury

of the vicinage at that, and therefore, cases transferred from the counties by certiorari or by Crown information were tried by juries of the vicinage either at bar or at nisi prius." (*Goebel & Naughton*, op. cit. p. 77.)

It is true that the authors in the same work (pp. 144, 145, 170) point out that in a few cases where it appeared that an impartial jury could not be drawn from the county where the cause of action arose or where an alleged misdemeanor was committed, an application for a change of venue was entertained or a direction given by the court that the trial should be by the Supreme Court " at bar " in another county, but it is significant that no case has been found where an indictment for a *felony* was tried in the Colony of New York except by a jury drawn from the county where the indictment was returned.

The assertion by the English crown that a colonist charged with a felony might be tried " at bar " by the Court of King's Bench at Westminster rather than by a jury of the vicinage was indeed one of the potent causes of the American revolution, and the original Constitutions of Maryland, Massachusetts, New Hampshire, Virginia, Pennsylvania and Georgia contained provisions expressly safeguarding trial by a jury of the county, or more often the vicinage. The Constitutions of other States contained provisions similar to that in the Constitution of New York, that " trial by jury in all cases in which it hath been used in the Colony of New York shall be established and remain inviolable forever." Of such constitutional guaranties Judge Cooley said: " Now that in jury trial it is implied that the trial shall be by a jury of the vicinage is familiar law. Blackstone says the jurors must be ' of the *visne* or neighbourhood; which is interpreted to be of the county where the fact is committed.' 4 Com. 350. This is an old rule of the common law; * * * It is true that Parliament as the supreme power of the realm made some exceptions, which are enumerated by Mr. Chitty in his treatise on Criminal Law, vol. 1 p. 179, * * * But it is well known that the existence of such statutes with the threat to enforce them was one of the grievances which led to the separation of the American colonies from the British empire." (*Swart* v. *Kimball*, 43 Mich. 443, 445, 448. See, also, Black on Constitutional Law [3d ed.], p. 684.)

It is true that Judge Cooley also said that perhaps the guarantee of a trial by jury might not exclude " a change of venue in

the application of the state to escape local passion, prejudice or interest,'' though, as he said, there was authority to the contrary, and in *Mack* v. *People of the State of New York* (82 N. Y. 235, 238), the court said of this provision of our Constitution that: '' By all rules of interpretation, then, we are to read the language of the bill of rights in the light of the law as it was when the bill of rights was adopted. Then, though as a rule indictments could be preferred and tried only in the county where the offense was committed, there were exceptions to that rule of instances *in which the legislature had directed otherwise.''* (Italics are new.) It is noteworthy that in this State no case can be found where a court directed the trial of an indictment for a felony by a jury drawn from a county other than that in which the indictment was found until after 1828 when the Legislature adopted a statute providing in part that '' all issues of fact joined upon any indictment, shall be tried by a jury, in the county where such indictment was found, unless for special causes the Supreme Court shall order an indictment removed into that court to be tried in some other county '' (2 Rev. Stat. of N. Y., part IV, ch. II, tit. V, § 1. See, also, L. 1829, ch. 65).

The Court of Appeals has said that '' the right to remove the place of trial from one county to another, where a fair and impartial trial cannot be had in the county where the indictment is pending, has long existed. It existed at common law, and was subsequently incorporated into the statutes of the State. . The provisions of the Code of Criminal Procedure upon the subject have been evolved from previous legislation and, so far as they extend, now contain the rule of law governing such an application '' (*People* v. *McLaughlin,* 150 N. Y. 365, 375). The court was there considering the judicial duty as well as power to remove the place of trial from one county to another *upon the application of the defendant* under the provisions of section 344 of the Code of Criminal Procedure which even then extended only to removal upon the application of the defendant, though the earlier statutes did not in terms specify upon whose application the removal might be made. What the court there said, has no reference to the effect of section 355 of the Code of Criminal Procedure or to applications of the prosecution for the removal of the trial of an indictment from one county to another.

While the earlier statutes, from which section 344 of the Code of Criminal Procedure had been evolved were still in effect, the Supreme Court of the State had, however, held that at common law the People had the right to move, upon good cause shown, for the removal of the trial of an indictment to another county and that the statute had not taken away this pre-existing right of the People. That was true, the court said, though some provisions of section 1 of the 1829 statute " may raise a slight inference that the Legislature by which it was passed supposed that the *certiorari* could be issued only at the instance of the defendant. But that could not have the effect to abrogate a pre-existing right of the people ". The court added that " it is safe to conclude that the well settled rights of the public have not been taken away by a remote inference " (*The People a. Baker,* 3 Abb. Prac. 42 [1856], *The People* v. *Webb,* 1 Hill 179).

These cases have been generally accepted as establishing the rule in this State that even without statutory authority the Supreme Court has inherent power to remove the trial of a case from one county to another upon the application of the prosecution when no statute directs otherwise. Doubtless at the time the Legislature adopted sections 344 and 355 of the Code of Criminal Procedure it knew that the Supreme Court claimed that power. Nonetheless, the Legislature must also have known that the power of removal had rarely been exercised at the instance of the prosecution, for, even where judges asserted that the power existed, they recognized that the right of an accused to a trial of an indictment before a jury drawn from the county where the indictment was found was not to be lightly disregarded and that only the most compelling reason could justify trial by a jury not drawn from the vicinage. The Legislature must have known too that the Constitutions of many States guaranteed the right of an accused to the trial of an indictment by a jury where the alleged crime occurred and provided that even the Legislature might not authorize a change of venue from that county and that in this State men who had studied the question were of the opinion that no such change should be permitted.

It is against that background that the scope and effect of section 355 of the Code of Criminal Procedure must be judged. The statute does not leave to " remote inference " a legislative intention that the trial of an indictment must be before a jury of the county in which the indictment was found unless removed

to another county at the instance of the defendant. The statute is an express mandate that a trial *must* be so had unless removed " as provided in the second subdivision of section three hundred and forty-four [of the Code of Criminal Procedure] "; and as this court pointed out in *People* v. *Farini* (239 N. Y. 411, *supra*), an action can be removed *as provided by section 344* only on the application of a defendant. Construction of the statute according to its letter as contended by the appellant conforms to the general practice since the adoption of the code and the common understanding that the statute has the effect of taking away such rights as the People may have had to apply for the removal of the trial of an indictment to another county. Since the statute was enacted no instance has been found where the People applied for such removal. In 1943 a bill was introduced to amend section 344 by adding the words " or the district attorney " after the words " on the application of the defendant." Though the failure to adopt the proposed amendment would not justify an inference that the Legislature disapproved the suggestion that the District Attorney as well as the defendant should have the right to move for a change in the place of a trial, it is, we think, significant that the Committee on Criminal Courts Law and Procedure of the Association of the Bar of the City of New York opposed the bill on the merits without any suggestion that under the law as it then stood the prosecution already had that right.

The question remains whether the Legislature could without violation of the Constitution prohibit the trial of an indictment in a county other than the county in which the indictment was found unless the action is removed upon the application of the defendant. We do not doubt that the statute does not violate any provision of the Constitution of the State even if, until that time, the Supreme Court could have directed the removal of an indictment to another county upon the application of the People. Since, as we said in *Mack* v. *People of the State of New York* (82 N. Y. 235, 237, *supra*), an accused has the " right to a trial in the county of his abode, of his friendships, of his means of defense ", except in instances where " the legislature had directed otherwise ", the Legislature, for the better protection of the right of the accused, may withdraw its previous sanction of judicial directions made, for good cause shown, on the application of the People and against the opposi-

tion of the accused, that the trial of an indictment be held in a different county. Such withdrawal of the legislative sanction leaves untouched the general jurisdiction of the Supreme Court in criminal cases. The statute merely regulates the manner in which the trial shall be had by safeguarding the ancient common-law right of the accused to a trial by a jury of the vicinage. The right of the Legislature to do that is preserved by the Constitution even though the Legislature may not deprive the Supreme Court of any part of its general jurisdiction.

The Legislature can if it chooses confer upon the People the right in proper case to apply for an order directing that an indictment be tried before a jury drawn from a county other than the county where the indictment was found. Instead it chose to provide in express language that such direction may be given only upon the application of the accused. Even if there were room for construction of the language of the statute the argument that it is essential for the administration of justice that the State should have the right to ask for a change of venue upon proof that otherwise an impartial jury cannot be impaneled loses its force when it appears that many other States have withheld that right from the People; that the Commissioners on Practice and Pleading, including David Dudley Field, appointed pursuant to the provisions of the Constitution of 1846 in this State, reported in 1850 a proposed code of criminal procedure which expressly confined to the defendant the right to apply for a change of venue; that no change in the place of trial of an indictment was made in this State on the application of the prosecution in almost one hundred years; and that as late as 1943 a group of distinguished lawyers after study of the subject reported to the Legislature that " the prosecuting agencies are provided with ample machinery to obtain a fair and impartial trial in the county in which an indictment is found." It is the function of the Legislature to determine whether or not that conclusion is sound. The courts must vindicate the right of an accused to a trial by a jury of that county unless the Legislature provides otherwise.

The order should be reversed and the petition granted.

Loughran, Lewis, Conway, Desmond, Thacher and Dye, JJ., concur.

Order reversed, etc.