THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* JOSEPH GIACCIO and EUGENE PANZELLA, Defendants.

Supreme Court, Special Term, Richmond County, April 14, 1950.

*Herman Methfessel, District Attorney (Alfred J. Cawse* of counsel), for plaintiff.

*Jerome Otis Ellis* for defendants.

Di GIOVANNA, J. Motion for an order " pursuant to section 346 of the Code of Criminal Procedure removing this criminal action now pending in the County Court of the County of Richmond, State of New York, from the said Court to a Term of the Supreme Court held in and for the County of Richmond."

The defendants say: " that these defendants could not have a fair and impartial trial before an unbiased court. * * * Our County Judge has heretofore expressed himself as to where the defendants were going to be sent and of the treatment they were going to receive."

They urge as grounds for the removal that remarks by the County Judge in chambers to the mothers of the defendants, his reading of the investigation and psychiatric reports before declaring them eligible to be treated as youthful offenders, his denial of bail and his denial of a motion in the County Court to disqualify himself, will tend so to bend him against the defendants as to prevent a fair and impartial trial.

All of the minutes of the various hearings in the County Court and the affidavits submitted on this motion have been studied by the court; it cannot find any basis for an opinion that the County Judge, actually or by inference, is biased or prejudiced in any degree whatsoever.

The Grand Jury indicted the defendants for robbery, grand larceny and assault in November, 1949, and recommended their

treatment as youthful offenders pursuant to title VII-B of part VI of the Code of Criminal Procedure. At a hearing held in the Youth Part, Richmond County, on November 25, 1949, the Judge explained " the advantages of youthful offender treatment " and said: " * * * after I have explained it to you, if there is anything you do not understand about it, do not hesitate to ask me and I will explain it again." He exhaustively explained to the defendants, their attorney and their parents the nature of youthful offender proceedings and reiterated his willingness to make any further explanation to them at any time that they desired. He explained to them the possible penalties that could come to them in the event of conviction under the indictment and the advantages resulting to them in the event that they were declared eligible to be treated as youthful offenders and convicted as youthful offenders, and then he said to each defendant and to each parent " Do I make that clear to you? " and each defendant and parent in turn answered, " Yes, sir." After a private conference between the defendants, their attorney and their parents, the defendants consented to be investigated and examined for the purpose of determining whether they were eligible to be adjudged youthful offenders and signed the required consents.

On January 20, 1950, after reading the reports of the investigators, the court asked the defendants for their consent to be sent to Kings County Hospital for psychiatric examination.

On March 1, 1950, they were returned to court for pleading. In accordance with the provisions of title VII-B, the court declared them eligible to be treated as youthful offenders, and the defendants pleaded not guilty. A date for trial was set and the defendants remanded without bail.

On Saturday, February 25, 1950, the mothers of the defendants came to the judge's chambers with an attorney. The mothers now say that the Judge told them that he was going to send the defendants to the New York City Center, and, eventually, to Elmira and then to Coxsackie. It is on the basis of that alleged statement to the mothers that the present application is made, based upon a charge that the Judge indicated that he had made up his mind to find the defendants guilty even before they had pleaded to the charge of being youthful offenders. However, a perusal of the record shows that whatever transpired in the judge's chambers was consistent with good judicial conduct and an intent to assist the defendants in obtaining the advantages available to them in youthful offender proceedings. The County Judge, in remarks set forth at length

in the minutes of March 1st and March 8th, says that for two and a half hours he sat talking with the mothers and the lawyer explaining the various features of the youthful offender law, the possible penalties in event of conviction, the advantages of trial as youthful offenders, and he further says that at no time did he positively state that he was going to find the defendants guilty, but rather discussed the possible results of pleas of guilty or not guilty. This is confirmed in the minutes of the hearing on March 8th, for, after stating in his own words what had transpired in the chambers, he said to the mothers in open court:

"So the record will be straight, Mrs. Giaccio, that which I have told Mr. Ellis is just about what occurred on that Saturday morning, is that not right?

Mrs. Giaccio: I believe so.

The Court: Yes. And you understood me all right that day?

Mrs. Giaccio: Yes.

The Court: And Mrs. Panzella, that which I have told them is substantially what happened between you and Mrs. Giaccio and me that Saturday morning?

Mrs. Panzella: Yes, sir.

The Court: And you understood me all right?

Mrs. Panzella: Yes. * * *

The Court: That's right; I told you that if he pleaded guilty he could go to Elmira and he would be studied for 75 to 90 days, and they would then go to a vocational training school; —

Mrs. Panzella: Yes, sir.

The Court: — that he also could plead not guilty, and then we would hear the witnesses and the man who is involved and everybody else would come in and, in your presence and in the presence of the boys, tell what happened. * * * *"

In answer to a question put to the mothers by Mr. Ellis, Mrs. Panzella said:

"I don't recall how he said it, but I just remember that he did say that, that they would be sent to Elmira and then to Coxsackie, but I don't remember if he said if they pleaded guilty or not guilty. I mean, he probably could say that, but I don't remember.

Mr. Ellis: Do you have any recollection of that, Mrs. Giaccio?

Mrs. Giaccio: I was too upset to really remember the words exactly, but I do remember him saying whether they pleaded guilty or not guilty that would be where they would go if eventually they did get found guilty."

An affidavit is submitted by the attorney who accompanied the mothers to the chambers of the County Judge, in which he says: "A great deal of conversation was had, including the places where both defendants may be sent." He makes no denial of the fact that the County Judge discussed the alternative pleas of guilty and not guilty.

The court finds that the County Judge, in his efforts to guard the rights of these defendants, zealously did all that any judge sworn to do his duty would have done and the spirit and intent

of the youthful offender act required him to do. The mothers came to his chambers voluntarily to ask questions which the Judge had invited, as indicated in the minutes of January 20, 1950, at page 8, wherein he said: "If there is anything you don't understand when the report comes back, your attorney will be glad to explain it to you, and I myself will be perfectly happy to sit down with the families and discuss any phase of it and tell you just what it means in plain language.", and the County Judge graciously answered their questions. It is customary practice for explanation of possible penalties in event of conviction to be made in conferences between the court and the attorneys and members of the defendant's families. There is nothing unusual in that. The charge that the County Judge impliedly became biased against the defendants when he read the reports of the probation officers and the psychiatric examination is without reality. The law charges him with the duty of doing that very thing in determining whether the defendants were eligible to be treated as youthful offenders.

By accepting the procedure, the defendants consented to the investigations outlined in title VII-B, and knew that, in order to be eligible to be treated as youthful offenders, the County Judge had to determine their eligibility from those reports.

The reading and studying of the reports are necessary requisites to enable the judge to determine whether the defendants are eligible to be treated as youthful offenders. To hold otherwise would make it necessary to transfer all youthful offender proceedings in which a plea of not guilty has been entered to another court for trial and would defeat the very purposes of this act.

The Governor in a message appended to chapter 549 of the Laws of 1943, the predecessor of the present title VII-B said: "The same courts which have previously handled such persons continue their jurisdiction, thus no additional expense or burden on the community is created. The experience of such courts and their personnel are still available in the treatment of the difficult problems arising from youthful offenses."

The District Attorneys' Association in a paper published in the New York Law Journal (N. Y. L. J., Aug. 30, 1943, p. 420, col. 1; Aug. 31, 1943, p. 426, col. 1) said: "The new youthful offender law eliminates the cumbersome method of substituting a wayward minor charge for the original offense. It avoids all the subterfuges and devices that have been heretofore resorted to, and provides a simple, direct and forthright procedure for determination and adjudication of the youthful offender.

\* \* \* Each court will maintain its present jurisdiction \* \* \* A successful administration of this new law requires an efficient probation department with adequate personnel.''

It can be seen that the Legislature intended to give a wide latitude to the County Judge in permitting him to read probation reports and psychiatric examinations before adjudging the defendants eligible to be treated as youthful offenders. For this the Legislature has given to the defendant the right to remove from himself the stigma of being called a '' criminal '' and a means of rehabilitation and shorter period of incarceration while being rehabilitated.

Another problem has been raised herein, to wit, the power of the Supreme Court to remove to itself from the County Court the trial of the charge of being a youthful offender at that stage in the proceedings where the charge of being a youthful offender has replaced the indictment. Pursuant to sections 22 and 344 of the Code of Criminal Procedure, the Supreme Court may remove to itself '' a criminal action, prosecuted by indictment.'' The query follows as to whether, after the defendants were adjudged eligible to be treated as youthful offenders, they continued to be prosecuted by indictment. Subdivision 4 of section 913-g of the Code of Criminal Procedure says: '' Should the court determine that the defendant is eligible to be so adjudged, no further action shall be taken on the indictment or information and the defendant shall be required to enter a plea of ' guilty ' or ' not guilty ' to the charge of being a youthful offender. \* \* \* ''.

The Appellate Division (2d Dept.) enacted '' Special Rules Regulating Procedure Under The Statute Relating to Youthful Offenders ''. While enacted to implement sections 252-a–252-h of the Code of Criminal Procedure, which were replaced by title VII-B in 1944 (L. 1944, ch. 632) the intent of the Appellate Division to clarify the meaning thereof is applicable to the present section. In rule III therein it says: '' \* \* \* If the court thereafter decides that the defendant shall be tried as a youthful offender the filing of the indictment as to said defendant, shall be permanently suspended and no further action thereon shall be taken. \* \* \* ''.

The District Attorneys' Association of the State of New York declared: '' By the enactment of chapter 549 of the Laws of 1943 \* \* \* a new type of offense, to be known as ' Youthful Offender ', has been created.'' (N. Y. L. J., Aug. 30, 1943, p. 420, col. 1.)

In the minutes of the County Court in this very case, the County Judge interpreted the sections as follows: '' It is not a crime to be a youthful offender. The law so provides, so that, even if you were to plead guilty as youthful offenders, it is nevertheless, not a crime. * * * It is not a misdemeanor, * * * ''

In the minutes of November 25th, page 3: '' If you accept the treatment as youthful offenders, the indictment becomes null and void, and just as though it never were found.''

At page 4: '' If you accept treatment as youthful offenders, the indictment is null and void and just as though it never were found.''

In the minutes of March 1st, at page 5, the court said: '' It is not a crime at all now,'' and counsel for defendant said: '' That's true.''

There seems to be no other conclusion but that title VII-B creates a new type of charge, in addition to the present existing indictment and information, and that once a defendant has consented to the proceedings and has been adjudged to be eligible to be treated as a youthful offender, all of the proceedings thereafter are in answer to the charge of being a youthful offender and not to an indictment. If that is so, then the Supreme Court has not the power to transfer this case to it in the event that it found that bias and prejudice existed. Jurisdiction remains with the court wherein the charge of being a youthful offender has been made.

In *Matter of Knight* (178 Misc. 972), an application was made in the Supreme Court to compel proceedings to be had against the defendant by indictment rather than information and for the transfer of the trial from Special Sessions to General Sessions. A discussion of the scope of section 344 of the Code of Criminal Procedure resulted in a finding by the court, in the footnote (p. 977): '' Change of venue is provided for in section 344 of the Code of Criminal Procedure, but under that section, the relief can only be given in connection with criminal actions ' prosecuted by indictment.' There is no provision in the Code for an application for change of venue with respect to criminal actions prosecuted by information. Nor is this a legislative oversight; for in 1939, the New York State Commission on the Administration of Justice, in its annual report, at page 327, specifically recommended the amendment of section 344 of the Code of Criminal Procedure so as to include the right of a defendant in a criminal action, prosecuted by information, to apply for a change of venue. While section 344 of the Criminal

Code was in some respects amended in 1941, this recommendation of the commission was not adopted. It must accordingly appear that the Legislature has indicated its intention not to permit applications for change of venue with respect to criminal actions prosecuted by information."

In *Matter of Murphy* v. *Supreme Court* (294 N. Y. 440), the court decreed the strict application of section 344 and declared the inherent right of the Supreme Court had been curtailed by that provision.

The Appellate Division of the Second Department in rule X of the said rules heretofore referred to said: " If the indictment be transferred or removed to another court pursuant to the provisions of the Code of Criminal Procedure, the recommendation, if any, of the grand jury, or the district attorney, shall likewise be transferred or removed. Thereupon the latter court shall exercise all the powers conferred by the statute relating to youthful offenders."

It is significant that the Appellate Division made no provision in respect to transfer after a finding by the court that the defendants were eligible to be treated as youthful offenders.

*People* v. *" John Doe "* (180 Misc. 932), cited in support of this motion differs from the facts in this case. Therein, an indictment found in the Supreme Court with a recommendation that the defendants be treated as youthful offenders, was transferred to the County Court before the recommendation had been acted upon. The opinion speaks of " an indictment after it has been filed." (P. 933.) An indictment under title VII-B is never filed where the recommendation has been made that the defendant be treated as a youthful offender and the investigation had and the finding made that he be treated as a youthful offender. The New York State District Attorneys' Association recognized this fact when they said: " (2) *Finding of indictment.* The law (chapter 549) does not apply until after it has been established, pursuant to law, that a prima facie case has been made out against the defendant. That is, until the grand jury has *found* an indictment. There is a legal distinction between the finding of an indictment and the presenting of an indictment in open court (Code Crim. Proc. sec. 272). Until the indictment is *presented and filed* by the clerk, it has no effect or validity in court. * * * ".

Existing law provides a remedy for relief in event of trial before a County Judge who, it is claimed, is disqualified (Code Crim. Pro., § 44) in a case where transfer is not permissible. If the County Judge in this case has erred in his determination

of the motion to disqualify himself, then that matter can be raised in another tribunal at the proper time. The conclusion is based upon the fact that Richmond County Court having sole jurisdiction once the youthful offender proceedings had progressed to the point as it had in this case, it can only request another County Judge of another county to act in his place in the event of its disqualification (*People* v. *Wurzler*, 300 N. Y. 344).

The cases cited in support of the application for removal, are not parallel to this case, for regardless of the reasons for removal therein, the trial was pursuant to indictment.

The youthful offender provisions of the Code of Criminal Procedure are of great benefit to a youth who has been arrested for the first time. It enables him to reduce the possible consequences for the crime he has committed to a degree far less punitive than provided in the Penal Law. In accepting the benefits thereunder and consenting to the waiver of jury trial and to the trial of being a youthful offender, he consents to the very procedure which was used in this case.

Motion is accordingly denied.